Bobby HOPPER *v.* Mary DENHAM, d/b/a WOODLAND
REALTY, GALLERY OF HOMES

83-199                                          661 S.W.2d 379

Supreme Court of Arkansas
Opinion delivered December 12, 1983

*Cypert & Roy*, for appellant.

*Gordon L. Cummings*, for appellee.

ROBERT H. DUDLEY, Justice. Bobby Hopper, the appellant, and his wife, Lois, sold a tract of commercial real estate in Springdale to Consumers Market, Inc., for $450,000.00. The appellee, Mary Denham, a real estate broker, demanded a broker's commission of eight percent of the sales price. The Hoppers denied owing a commission to appellee or her agency. The appellee then filed suit against both Hoppers and, in a jury trial, was awarded the full commission of eight

percent, or $36,000.00, plus pre-judgment interest of $4,-154.29 against Bobby Hopper. He appeals the award. We affirm.

In February, 1980, appellant Bobby Hopper placed signs on the tract. The signs contained the words "For Sale by Owner" along with his name and telephone number. He removed the signs shortly afterward. Subsequently, an agent for appellee's agency contacted appellant, hoping that the contact would result in a listing arrangement for the agency. Appellant declined to execute a written listing agreement but agreed that, should the agent or agency procure a buyer, the appellant would receive $500,000.00 and the agency would receive any part of the sales price over that amount. Pursuant to this understanding, two of appellee's agents, the appellant, and a representative of Consumers Market, the potential buyer, met in July, 1980. At this time the tract was offered to Consumers for $555,000.00, but the offer was not accepted.

At a second meeting, in August, 1980, the Consumers representative expressed interest in a sale if the price were lowered. Following this meeting, the appellee's agents and the appellant discussed reducing the price. The appellee alleged that a new arrangement was made in which appellant would pay eight percent of the sale price to the agency as a commission. The existence of this agreement, testified to by appellee's agents, was denied at trial by appellant.

No progress was made toward a sale in the following months, and appellant had the impression that the appellee's agency was no longer trying to sell the tract to Consumers. Appellant also stated that he had given up on selling the land to Consumers. Later, appellant, through direct contact with Consumers, consummated a sale of the property for $450,000.00. The deed was dated February 26, 1981, and filed of record on February 27, 1981. Appellee sued appellant and his wife, Lois Hopper, for the commission. The trial court granted a directed verdict in favor of Lois Hopper but let the case against appellant go to the jury. The jury returned a $36,000.00 judgment against appellant. The

trial court, upon motion by appellee, awarded pre-judgment interest of $4,154.29.

Appellant first argues that the trial court erred by failing to grant a directed verdict in his favor for either of two reasons: (1) that only one contract was proved and under that contract appellee could collect a commission only if a buyer were found ready, willing, and able to purchase the tract at a price of more than $500,000.00; or (2) that any contract between appellee and appellant was abandoned by appellee.

We find no merit in either contention. First, two of appellee's agents, Jerry Allred and Elam Denham, testified about a second mutual agreement by which appellee was to receive a commission of eight percent of the sales price for procuring a ready, willing, and able buyer. For performance of that second agreement, it was not necessary that the agent make the sale. It has long been held that a broker, employed to sell property, is entitled to his commission where he initiated negotiations between the principal and another which resulted in a sale by the principal, *Hodges* v. *Bayley*, 102 Ark. 200, 143 S.W. 92 (1912). Second, appellee's agent most closely involved with the property, Jerry Allred, testified about continuing efforts to sell the property through January of 1981, when the agency learned of the sale by Hopper to Consumers. In particular, Allred testified that, between June 27, 1980, and January 30, 1981, he called Consumers 24 times and was called by Consumers 24 times. This continuing effort refutes any contention that appellee's agency had abandoned the contract. Thus, substantial evidence existed that appellee was entitled to her commission, and the trial court's refusal to grant a directed verdict was not error.

Appellant next argues that the court erred in denying his motion for a new trial challenging the sufficiency of the evidence. However, since the trial court was correct in finding that the evidence was sufficient to deny the motion for a directed verdict. it necessarily follows that a motion for a new trial based upon the insufficiency of the evidence was correctly denied. *Green* v. *Gowen,* 279 Ark. 382, 652 S.W.2d 624 (1983).

The appellant contends that one of his requested instructions was erroneously refused. The trial court correctly refused the instruction because other instructions were given which covered the subject. A party is not entitled to his particular preference in the wording of instructions, and a trial judge is not required to give repetitious or redundant instructions. *Hough* v. *Continental Leasing Corp.*, 275 Ark. 340, 630 S.W.2d 19 (1982).

The appellant next contends that the trial court erred in refusing to set aside the verdict because of misconduct on the part of appellee's counsel. He argues that appellee's counsel improperly conducted voir dire and made statements during closing argument which were improper but in neither instance was an objection made. By not objecting to questions on voir dire and to statements made during closing argument, the trial court was not apprised of the alleged error and was not given a chance to correct the mistakes, if any. Therefore, the matter is not preserved for appellate review, *Wasp Oil, Inc.* v. *Arkansas Oil and Gas, Inc.*, 280 Ark. 420, 658 S.W.2d 397 (1983). For the rare exceptions to the basic requirement of an objection in the trial court see *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980). However, the appellant did object when, during opening statement, the appellee's counsel referred to the net profit made by the appellant in the transaction. The trial court sustained the objection and admonished the jury: " . . . . the jury will disregard any statement with respect to the amount of net profit the Hoppers may or may not have received, that's not an issue in this lawsuit." Later, while appellee's attorney was questioning the appellant, the following colloquy took place:

Q. For $450,000.00. Why did you sell it for $450,000.00.
A. Because, I made a sizeable profit on it.
Q. How much did you make?
Mr. Ludwig: [appellant's attorney] Objection, your honor.
The Court: Sustained.
Q. O.K., alright, that's fair enough. You don't deny you made a sizeable profit on it, do you?
The Court: Mr. Cummings, I sustained an objection

with reference to profit.

Mr. Cummings: [appellee's attorney] Yes, Sir, Judge.

The Court: Profit has nothing to do with the issues in this case, and the jury is so instructed.

Mr. Ludwig: Thank you, Your Honor.

The trial court prevented error by sustaining the objection and, on the court's own motion, admonished the jury with the limiting instruction. The appellant was apparently satisfied with the admonition for there was no request for a mistrial. It was only after the adverse verdict that appellant argued that the statement and questions were so unfair that the jury verdict is tainted. In these circumstances, no reversible error appears. *Boyette* v. State, 250 Ark. 536, 465 S.W.2d 901 (1971).

Appellant contends that, since he and his wife owned the tract as tenants by the entirety, it was inconsistent to grant a directed verdict in favor of his wife but not him. The argument is without merit. The trial court properly granted the directed verdict in favor of Lois Hopper because, even though she was a tenant by entirety, she did not employ appellee and is not liable for her commission. *Long* v. *Risley*, 208 Ark. 608, 188 S.W.2d 132 (1945). There was substantial evidence that appellant bound himself to pay a broker's commission and one who employs a broker may be liable for the commission regardless of the employer's interest or lack of interest in the property. See *Reynolds* v. *Ashabranner*, 212 Ark. 718, 207 S.W.2d 304 (1948).

Upon appellee's motion, the trial court awarded pre-judgment interest of six percent from date the complaint was filed, April 8, 1981, to the date of judgment, March 14, 1983. The appellant argues that "to permit the appellee to make a separate request of the court on the issue of interest violates the appellant's right to a trial by jury." We find no merit to the argument. An award of pre-judgment interest is a matter of law and the right to a trial by jury does not extend to matters of law. As we stated in *Wooten* v. *McClendon*, 272 Ark. 61, 612 S.W.2d 105 (1981), "[w]here prejudgment interest is collectible at all, the injured party is always entitled to it as a matter of law. Nothing is left for the jury's consideration."

Appellant further contends that the award of pre-judgment interest was erroneous because the amount of appellant's liability did not become clear until the conclusion of the trial. The test for an award of pre-judgment interest is whether a method exists for fixing an exact value on the cause of action at the time of the occurrence of the event which gives rise to the cause of action. *Lovell* v. *Marianna Federal Savings & Loan Assn.*, 267 Ark. 164, 589 S.W.2d 577 (1979). If such a method exists, pre-judgment interest should be allowed, because one who has the use of another's money should be justly required to pay interest from the time it lawfully should have been paid.

Appellant urges that the post-judgment award of interest at a rate of ten percent was an abuse of discretion by the trial court and, instead, six percent should have been awarded. Ark. Stat. Ann. § 29-124 (Repl. 1979) provides ten percent to be the going rate for post-judgment interest, unless the judge, in his discretion, reduces the rate. The trial court stated: "Now, after judgment, the court will allow ten percent [interest], because of economic conditions and the prevailing rate of interest. Everybody knows that your money will earn more than ten percent interest." This is in conformity with the purpose of awarding post-judgment interest, which is to compensate the judgment creditor for the loss of the use of money adjudged to be his. *Equifax, Inc.* v. *Luster*, 463 F. Supp. 352 (E.D. Ark. 1978).

Appellant also argues that post-judgment interest should accrue only on the jury award of $36,000.00 and not on the court's pre-judgment interest award of $4,154.29. The purpose of awarding interest would be frustrated if appellee were not compensated for the loss of use of all of his money, both before and after judgment.

Affirmed.

ADKISSON, C.J., and HICKMAN, J., dissent.