TB of BLYTHEVILLE, INC., and Interested Underwriters at Lloyd's, London, Signatory Policy No. 1772 *v.* LITTLE ROCK SIGN & EMBLEM, INC.

96-562                                    946 S.W.2d 930

Supreme Court of Arkansas
Opinion delivered June 2, 1997

*Reid, Burge, Prevallet & Coleman*, by: *Robert L. Coleman*, for appellants.

*Rieves & Mayton*, by: *Martin W. Bowen*, for appellee.

W.H. "Dub" Arnold, Chief Justice. This appeal involves an action brought by TB of Blytheville, Inc. (Taco Bell), seeking damages against Little Rock Sign & Emblem (LR Sign) for two allegedly defective signs sold by LR Sign. Taco Bell initiated this action under the theories of negligence, breach of warranty, and strict product liability. A trial was held in which a jury rendered a

verdict for Taco Bell for $3,892.19. Taco Bell appeals asserting several trial court errors and requests a new trial. We agree that the trial court erred in several of its rulings and therefore, we vacate judgment and remand this action for a new trial.

In October 1991, Taco Bell purchased a one-hundred-foot sign from LR Sign that was installed on its restaurant premises. Taco Bell paid $28,269.36 for the sign. On March 18, 1992, the sign fell to the ground, and it was destroyed.

Taco Bell contacted its insurer Interested Underwriter's at Lloyds, London (Lloyd's). Lloyd's then began an investigation which was joined by LR Sign's insurer, Travelers, to determine the reason for the sign's falling. Lloyd's hired an adjusting firm, Gay & Taylor. Lloyd's and Travelers' jointly hired a metallurgist to determine the cause of the sign's falling.

Approximately six weeks after the first sign falling, LR Sign installed a second sign on the premises. An invoice for $25,086.85 for this sign was sent to Gay & Taylor. The invoice was resubmitted to Edmondson Management, Inc., the financial management firm for Taco Bell, and it was paid. Around this time, Lloyd's issued a check to Taco Bell as an insurance payment for the damage of the first sign for $24,086.85, the cost of the second sign, minus Taco Bell's $1000 deductible.

In March of 1993 during a wind storm, the second sign began to lean and shake; Taco Bell hired Hinson Display & Sign Service of Blytheville to immediately make temporary repairs so that the sign would not fall. These repairs cost $1,068.19. Hinson determined that the post of the sign was not sturdy enough to support the sign's height, so they permanently lowered the sign to a height of sixty feet to ensure that it would not fall. The costs of the permanent repairs were $5,281.35.

Taco Bell initiated suit against LR Sign seeking damages sustained in the failure of both the first and second signs. Taco Bell sought damages which included reimbursement for the $1000 for its deductible and for the expenditures for the temporary and permanent repairs of the second sign, and also, for other damages to its property caused when the first sign fell. Additionally, Taco Bell

sought repayment of the $24,086.85 on behalf of Lloyd's for the claim it paid arising out of the falling of the first sign.

A jury trial was held. The jury returned a verdict awarding Taco Bell the sum of $3,892.19 and dismissing Lloyd's claim. Taco Bell and Lloyd's appeal various rulings of the trial court and request a new trial.

Taco Bell asserts six points of error on appeal. First, Taco Bell asserts that the trial court erred in ruling that the common law voluntary-payment rule governs the transaction for the second sign and bars recovery absent instances of fraud or duress. Second, Taco Bell contends that the trial court erred in submitting an interrogatory to the jury which stated that Mr. Glenn Norwood, an employee of the adjusting firm Gay & Taylor was an agent of Lloyd's of London. Third, Taco Bell asserts error in the trial court's ruling that Lloyd's was the real party in interest. Fourth, Taco Bell contends that the trial court erred in excluding evidence regarding the costs of permanent repairs to the second sign. Fifth, Taco Bell asserts error in the trial court's failure to award pre- and postjudgment interest. And lastly, Taco Bell appeals the denial of its motion for a new trial because the jury's verdict was against the undisputed evidence.

## I. Voluntary Payment Rule

The trial court ruled that Taco Bell was barred from recovery for the amount paid for the second sign because of the common-law voluntary-payment rule.[1] Appellant requests that we find that the voluntary-payment rule has been displaced by the enactment of the Uniform Commercial Code and is not controlling in instances involving the sale of goods.

In *Boswell v. Gillett*, 226 Ark. 935, 940, 295 S.W.2d 758, (1956), we applied the common-law voluntary-payment rule and noted, "When one pays money on demand that is not legally enforceable, the payment is deemed voluntary. Absent fraud,

---

[1] The trial court ruling was limited to barring Taco Bell's claim for its $1000 deductible amount. The trial court ruling that Lloyd's was the real party in interest allowed Lloyd's to pursue its claim for the additional $24,086.85 paid for the second sign.

duress, mistake of fact, coercion, or extortion, voluntary payments cannot be recovered." According to the UCC, common-law principles of law and equity are given full effect unless displaced by *particular provisions of the UCC.* Ark. Code Ann. § 4-1-103 (Repl. 1991) (emphasis supplied). While the UCC has given buyers and sellers specific remedies for breach of sales contracts and the warranties therein, we find no support for the contention that the common-law voluntary-payment rule is inconsistent with the application of the UCC; therefore, the voluntary-payment rule has not been displaced by the enactment of the UCC.

Despite the fact that the voluntary-payment rule can apply in situations involving a sale of goods, it is not applicable to the facts of this case. It is obvious that the UCC applies to the contract for the sale of the first sign; likewise, the sale of the second sign also was a transaction governed by the UCC. As the trial court found, the purchase of the second sign was an independent transaction and a second contract between Little Rock Sign and Taco Bell. The contract for the second sign was evidenced by the invoice that required Taco Bell to pay $25,086.85 for the "new unit." In testimony at trial, the second sign was referred to as a "new" unit.

Appellee contends that the sale of the second sign was merely a repair of the first faulty sign that is not governed by the UCC. The UCC applies to original goods; therefore, if the second sign is a repair, then the UCC does not apply. We do not think that the purchase of the second sign was a "repair."

The definition of "repair" from *Black's Law Dictionary* is "to mend, remedy, restore, renovate, to restore to a sound or good state after decay, injury, dilapidation, or partial destruction." It is our interpretation that the word repair "contemplates an existing structure . . . which has become imperfect and means . . . to restore the existing structure to a condition in which it originally existed, or as near as can be attained." BLACK's LAW DICTIONARY 1298 (6th ed. 1990), *citing Childers v. Speer*, 63 Ga. App. 848, 12 S.E.2d 439, 440 (1940). *See also, Kuras v. Kope*, 533 A.2d 1202, 1209 (Conn. 1987); *Wroblewski v. Grand Trunk W. Ry. Co.*, 276 N.E.2d 567, 574 (Ind. 1971).

When the first sign fell, it was completely destroyed; only a small portion of the post remained. There was no possible way to repair that sign. At that time, Taco Bell had the option to pursue an action for damages based upon the insufficiency of that sign. In fact, during this time both parties' insurance carriers became involved and were trying to determine fault. At the moment the sign fell, Taco Bell was faced with the possibility of lost profits due to the fact that there was no sign to advertise its presence in that location. Despite the possibility of pursuing an action regarding the first sign, Taco Bell mitigated its damages by procuring a second sign. This sign was not purchased as a repair to the first sign but as a new sign that was needed to sustain business. The fact that the first sign fell gave rise to the need for the second sign; however, the purchase of the second sign was not a subsidiary action to the first contract but a second, independent contract between the parties.

Because the contract for the second sign was an independent contract for the sale of goods, that transaction is also governed by the UCC. Therefore, upon the execution of the sales contract, all the duties of buyers and sellers under the UCC governed the parties. Upon acceptance of the second sign, Taco Bell had a duty under the UCC to pay LR Sign pursuant to the contract. According to Ark. Code Ann. § 4-2-607(1) (1991), the effect of Taco Bell's acceptance of the sign is the obligation to pay "the contract rate for any goods accepted." This legal duty to pay renders the voluntary-payment rule inapplicable to the second contract. In order for the voluntary-payment rule to apply, Taco Bell must not have had such a duty. Therefore, the trial court erred in holding that the voluntary-payment rule applied.

## II.  Agency of Claims Adjuster

Appellant also contends that the trial court erred in submitting an interrogatory to the jury regarding the voluntary-payment rule, which states: "Glenn Norwood was acting within the scope of his authority as an agent of Interested Underwriter's at Lloyd's, London, and while acting within the scope of his authority as an agent . . . had prior knowledge of (and)(or) consented to the payment. . . ."

■ ·We agree that there was error in submitting this interrogatory. Foremost, this was error because the voluntary-payment rule is not applicable to the case before us. Additionally, the record does not contain any evidence establishing an agency relationship between Mr. Glenn Norwood, an employee of Gay & Taylor, and Interested Underwriter's at Lloyd's. There is nothing in the record to establish that an agency relationship existed between Mr. Norwood and Lloyd's.

### III. Real Party in Interest

On the morning of the trial, the trial court ruled that Lloyd's was the real party in interest, not Taco Bell. Appellant argues that the trial court erred in this ruling. We agree.

■ Rule 17 of the Arkansas Rules of Civil Procedure provides that only a real party in interest may bring a cause of action. That party is generally considered the person "who can discharge the claim on which suit is brought, and not necessarily the person ultimately entitled to the benefit of recovery." *Childs v. Philpot*, 253 Ark. 589, 487 S.W.2d 637 (1972).

■ In *Farm Bureau Ins. Co. v. Case Corp.*, 317 Ark. 467, 878 S.W.2d 741 (1994), we held that the general rule is that where an insurance company has only partially reimbursed an insured for his loss, the insured is the real party in interest and can maintain the action in his own name for the complete amount of his loss. *See also McGeorge Contracting Co. v. Mizell*, 216 Ark. 509, 226 S.W.2d 566 (1950). Partial reimbursement includes instances when an insured has not been reimbursed for the amount of his deductible. This court has held that where the insured has a deductible interest, he is the real party in interest and the action must be brought in his name for his own benefit. *Page v. Scott*, 263 Ark. 684, 686, 567 S.W.2d 101 (1978); *Washington Fire & Marine Ins. Co. v. Hammett*, 237 Ark. 954, 377 S.W.2d 811 (1964); *see also Thompson v. Brown*, 5 Ark. App. 111, 633 S.W.2d 382 (1982). The insured stands as trustee to the insurer as to any amount recovered; the insurer is not a necessary party. *Id.*

In this case, it is undisputed that Taco Bell holds, at the very least, a deductible interest in the litigation. Following prior rulings of this court, Taco Bell is the real party in interest.

## IV. Trial Court Rulings on Evidence

Appellant contends that the trial court erred in excluding evidence related to the costs of making permanent repairs to the second sign. Relevancy of evidence is within the trial court's sound discretion, subject to reversal only if an abuse of discretion is demonstrated. *Potlatch Corp. v. Missouri Pac. R.R. Co.*, 321 Ark. 314, 902 S.W.2d 217 (1995); *Turner v. Lamitina*, 297 Ark. 361, 761 S.W.2d 929 (1988).

We give deference to the judgment of the trial court in matters regarding the admissibility of evidence; however, in this instance, we think there was an abuse of discretion in excluding the evidence relating to the permanent repair of the second sign. As we have discussed *supra*, there were two separate contracts between the parties. Taco Bell is entitled to have a jury determine whether it should recover damages based upon the alleged defects in the first sign that fell; additionally, Taco Bell should be allowed to submit to the jury evidence regarding whether the second sign was faulty, and an important component of such evidence includes the amount of claimed damages. Costs expended to permanently repair the second sign are relevant to the jury's determination of damages in these issues.

## V. Pre- and Postjudgment Interest

Prejudgment interest is compensation for recoverable damages wrongfully withheld from the time of the loss until judgment. This interest must be allowed for any injury where, at the time of loss, damages are immediately ascertainable with reasonable certainty. Where prejudgment interest is collectible at all, the injured party is always entitled to it as a matter of law. *Wooten v. McClendon*, 272 Ark. 61, 612 S.W.2d 105 (1981). We stated in *Lovell v. Marianna Federal Savings & Loan Association*, 267 Ark. 164, 589 S.W.2d 577 (1979): "The test in prejudgment interest cases is whether there is a method of determination of the value of the

property at the time of the injury. If such method exists prejudgment interest should be allowed."

We believe that the amount of property damage was ascertainable from the date of the sign falling and prejudgment interest should have been awarded in this case.

Postjudgment interest is governed by Ark. Code Ann. § 16-65-114(a) (1987), which states:

> Interest on any judgment entered by any court or magistrate on any contract shall bear interest at the rate provided by the contract or ten percent (10%) per annum, whichever is greater, and on any other judgment ten percent (10%) per annum, but not more than the maximum rate permitted by the Arkansas Constitution . . . .

Postjudgment interest is to be awarded on the total amount of damages, including prejudgment interest, to compensate the recovering party for the loss of the use of money adjudged to be his. *Hopper v. Denham*, 281 Ark. 84, 661 S.W.2d 379 (1983). The purpose of awarding interest would be frustrated if a party were not compensated for the loss of use of all of his money, both before and after judgment. The award of interest is necessary to fully compensate an injured party. *Chambers v. Manning*, 315 Ark. 369, 868 S.W.2d 64 (1993) See also, *Wooten v. McClendon*, 272 Ark. 61, 612 S.W.2d 105 (1981).

The trial court erred by not granting prejudgment and postjudgment interest. Upon remand, interest should be awarded upon any jury determination of damages.

### VI. Motion for New Trial

Taco Bell contends that the trial court erred in denying its motion for a new trial. This issue will not be addressed because it is moot in view of the discussion *supra* of errors which warrant the remand for a new trial.

For the foregoing reasons, we reverse and remand this action for a new trial consistent with this opinion.

Reversed and remanded.

NEWBERN, GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. First, Taco Bell, as I understand the record, argued that, if Glenn Norwood was Interested Underwriter's agent, a fact issue existed whereby the jury could find (and did) that Norwood (and thereby Interest Underwriters) consented to Taco Bell's voluntary payment for the second sign. Thus, I fail to see how this court can reverse based upon Ark. Code Ann. § 4-2-607(1) (Repl. 1991). In other words, if Taco Bell's second sign is a repair, not an original good, the Uniform Commercial Code (§ 4-2-607) does not apply, and the trial court's ruling was correct that the common-law voluntary-payment rule bars Taco Bell's recovery.

While the majority attempts to recharacterize Taco Bell's sign replacement as resulting from Little Rock Sign's sale to Taco Bell of a new sign or original good governed by Ark. Code Ann. § 4-2-607(1), the evidence decidedly supports the view that the second sign resulted from *repair* work. In fact, the trial court, without objection as I read the record, instructed the jury that to assess Taco Bell's damages, it must fix the amount of money which would reasonably and fairly compensate Taco Bell for the reasonable expense of necessary repairs to the area surrounding the fallen sign and expenses for necessary *repairs* to the *second sign*. In addition, by interrogatory number one, the jury was asked to determine if Norwood acted within the scope of his authority for Interested Underwriters and if Interested Underwriters consented to the payment of $25,086.85 for the second sign. The jury answered yes.[1] Examples of the evidence supporting the jury's decision are as follows:

• Laverne Lovette, Little Rock Sign's officer manager, averred that, on March 18, 1992, the sign and support post broke and fell. She said Taco Bell requested Little Rock Sign *repair the broken sign, and*, as a result, *Little Rock Sign repaired the sign and post*. She further averred that Little Rock Sign sent a bill in the amount of $26,085.85 for the repair work it had performed.

---

[1] In a pretrial motion for partial summary judgment, the trial court ruled the Uniform Commercial Code provisions did not apply to the facts of this case, and as the trial developed, evidence was introduced without objection to support the trial court's and later the jury's decisions.

• Glenn Norwood, General Adjuster, testified he saw Little Rock Sign's itemization for what the sign replacement would be and determined the cost was in line for what a sign replacement should be. Norwood said he was advised that a *sign had been put back in place, and he knew that Little Rock Sign was the one that put it back in place.* He further said that he told Little Rock Sign the person they *needed to bill was the person who had hired them to do the repairs.* Norwood identified a proof of loss statement that the full cost of *repair or replacement* was $25,086.85.

• Darrell Glover, owner of Little Rock Sign, testified and identified the invoice for *reinstallation* of the damaged sign and said that immediately after the sign was damaged, "*We started repairing and building a new sign.*" He further stated he replaced the parts that needed replaced and the amount of the bill was for all the work done in removing the damaged parts.

• Mark Turner, General Manager of Edmondson Management, said, "We told Glover that the sign fell and *we wanted him to put the sign back up for us,*" and he did that. According to Turner's notes, the *re-erection* of the sign was completed on May 1, 1992. Turner later expressed that he had done enough for Glover by paying him twice for a sign that never was put up right. (Emphasis added.)

While other like repair evidence is dispersed throughout the record, the foregoing is sufficient to support the trial court's ruling (and jury's decision) that Taco Bell's second sign was the result of repairs performed by Little Rock Sign, making the voluntary-payment rule, not the UCC, applicable to the facts of this case. That being so, I respectfully dissent and would affirm the trial court's holding that the voluntary-payment rule applied. In sum, because the jury in considering interrogatory number one found that (1) Norwood was Interested Underwriters' agent, and (2) Norwood acted within the scope of such authority when he consented to Taco Bell's voluntary payment to Little Rock Sign for the repair of the second sign, this court, on review, is obliged to affirm those decisions.

NEWBERN, J., joins this dissent.