RAY & SONS MASONRY CONTRACTORS, INC.,
Franklin & Son, Inc., and Fireman's Fund Insurance Company
*v*. UNITED STATES FIDELITY & GUARANTY
COMPANY and Crane Construction Company

02-697 114 S.W.3d 189

Supreme Court of Arkansas
Opinion delivered May 15, 2003

202

*Laser Law Firm*, by: *Sam Laser* and *Brian A. Brown*, for appellant.

*Hardin & Grace, P.A.*, by: *David A. Grace*; and *Faegre & Benson, LLP*, by: *Patrick J. O'Connor, Jr., James J. Hartnett, IV*, and *Michael B. Lapicola*, for appellees.

JIM HANNAH, Justice. Ray & Sons Masonry, Inc. ("Ray"), appeals the denial of a motion for judgment notwithstanding the verdict. Ray alleged in its motion that the issue of Ray's liability in contractual indemnity should not have been submitted to the jury because the cause of action was barred by the statute of limitations, by the statute of repose, by laches, and by estoppel. This case raises the issue of whether general contractor Crane Construction Co. ("Crane") and its subrogee surety United States

Fidelity & Guaranty Co. ("USF&G"), had a viable cause of action against Ray under the indemnity provision of the subcontract between Ray and Crane regarding work done on the McKinney, Texas, Wal-Mart store. Crane asserts that Ray breached the indemnity provision in the construction subcontract by refusing to defend and indemnify Crane in the federal litigation. We affirm the trial court holding that the action in contractual indemnification was not barred by either the statute of limitations or the statute of repose. Ray waived the argument on laches and estoppel.

*Facts*

This case involves the alleged breach of an indemnity agreement in which Ray agreed to indemnify Crane from claims and causes of action arising from work performed by Ray for Crane on a Wal-Mart store in McKinney, Texas, that Crane was building for Wal-Mart. Wal-Mart contracted with Crane to build eleven Wal-Mart and Sam's Club stores in several different states.

Ray carried out its masonry work on the McKinney, Texas, Wal-Mart store in late 1992. According to Wal-Mart's experts, construction of the McKinney, Texas, store was completed June 1, 1993. On September 23, 1993, Crane sued Wal-Mart in federal court for nonpayment of amounts due under its contracts with Wal-Mart for construction of the eleven stores. On November, 13, 1993, Wal-Mart counterclaimed, alleging defective construction on all eleven stores. Crane attempted unsuccessfully to sue Ray and a number of other subcontractors in the federal litigation.

In October 1994, Wal-Mart was provided with an expert report on alleged construction defects in the masonry work at the McKinney, Texas, store. On November 7, 1994, Crane sent Ray a letter stating that Wal-Mart had counterclaimed for defective construction and Crane listed all eleven Wal-Mart and Sam's Club stores, including the McKinney, Texas, store. The letter demanded indemnification under the subcontract alleging defective work by Ray on the "relevant project(s)." On December 22, 1995, Crane sent a letter to 278 subcontractors, including Ray, informing them that a list of deficiencies and defects, and over 2000 pages of documents, was available for inspection and copy-

ing. The letter stated, "We anticipate that the majority of all sub-contractors will have some defective or deficient work identified in these lists."

On February 22, 1996, Crane filed a complaint with causes of action in indemnification, breach of contract, and negligence, in Pulaski County Circuit Court against eighteen of the 278 sub-contractors on the projects, including Ray. In paragraph 2, Crane alleges:

> The defendants referenced in the caption above who are subcon-tractors, their predecessors and/or successors, contracted with Plaintiff to perform certain work and services to Wal-Mart con-struction projects. Pertinent information regarding these subcon-tractors is as follows: . . . .

Paragraph 2 then sets out a list of the eighteen subcontractors sued, identifying them by the project at issue in the case. Ray is listed as having performed work on the West Helena store. The McKinney store is on the list, but only in reference to Roy Solis Steel Co. Although eighteen subcontractors were sued, thirty-one subcontracts are attached to the complaint. This is because where paragraph 2 in the complaint identifies defective work on more than one store for a subcontractor, a copy of the subcontract for each alleged site of defective construction is provided. Ray's subcontract for the West Helena store is attached to the complaint consistent with the allegations in paragraph 2. No subcontract for Ray's work on the McKinney, Texas, store is attached to the com-plaint. In paragraph 12 of the complaint, Crane alleges it was sued for defective construction by Wal-Mart on the projects identified in paragraph 5, which is a list of all eleven stores. In paragraph 22, Crane alleges it is due indemnification in defense of the Memphis litigation. Paragraph 18 states:

> Upon information and belief, Wal-Mart alleges that there is faulty and defective work and construction within the projects generally and specifically and particularly within the scope of the subcontracts and on the projects identified in paragraph 2 above.

Paragraph 2 identifies Ray's work on the West Helena store and makes no reference to Ray's work on the McKinney, Texas, store.

In the amended complaint filed January 2, 1997, the number of subcontractors sued was reduced to fourteen from the eighteen sued in the original complaint. Similar to the original complaint, the amended complaint in paragraph 8 states:

> [t]he defendants referenced in the caption are subcontractors having contracted with Crane to perform certain work and services with respect to certain of the projects. The pertinent information regarding these subcontractors is as follows: . . . .

As in the original complaint, Ray is listed as having performed work on the West Helena store, and the only mention of the McKinney, Texas, store is again regarding Roy Solis Steel Co. Again, as with the original complaint, Ray's subcontract for work on the McKinney, Texas, store is not attached to the complaint.

On August 19, 1996, USF&G wire transferred funds to Wal-Mart in settlement of the federal litigation between Wal-Mart and Crane. On July 12, 2001, in the second amended complaint, USF&G first makes assertions that Ray performed defective work on the McKinney, Texas, store and attached a copy of Ray's McKinney subcontract. For the first time in the second amended complaint, USF&G and Crane included allegations of damages, and attributed to Ray liability for damages of $16,756.00, with respect to the West Helena store, and $2,614,431.00, with respect to the McKinney store.

This case was submitted to the jury with respect to Ray solely on the issue of whether there was a breach of contractual indemnity on both the West Helena and the McKinney stores. The jury returned an award against Ray in the amount of $1.5 million.

### Standard of Review

In reviewing the denial of a motion for judgment notwithstanding the verdict, we will reverse only if there is no substantial evidence to support the jury's verdict and the moving party is entitled to judgment as a matter of law. *Ethyl Corp. v. Johnson*, 345 Ark. 476, 49 S.W.3d 644 (2001); *Conagra, Inc. v. Strother*, 340 Ark. 672, 13 S.W.3d 150 (2000). Substantial evidence is that which goes beyond suspicion or conjecture and is

sufficient to compel a conclusion one way or the other. *Eythl Corp., supra.*

## Indemnification

■ The sole cause of action submitted to the jury was whether Ray and Franklin & Sons, Inc., breached the indemnity provisions in the subcontracts. Indemnification agreements are contracts. *Stilley v. James*, 345 Ark. 362, 48 S.W.3d 521 (2001). A contract of indemnity is to be construed in accordance with the general rules of construction of contracts. *Nabholz Constr. Corp. v. Graham*, 319 Ark. 396, 892 S.W.2d 456 (1995); *Ark. Kraft Corp. v. Boyed Sanders Constr. Co.*, 298 Ark. 36, 764 S.W.2d 452 (1989); *Pickens-Bond Constr. Co. v. N.L.R. Elec. Co.*, 249 Ark. 389, 459 S.W.2d 549 (1970). If there is no ambiguity in the language of the indemnification provision, then there is no need to resort to rules of construction. *Nabholz Constr., supra.*

The indemnification provisions in the subcontracts of Ray both provided:

> The subcontractor agrees to protect, indemnify and hold Crane free and harmless from and against any and all claims, demands and causes of action of every kind and character (including the amounts of judgments, penalties, interest, court costs and legal fees incurred by Crane in defense of same arising in favor of Governmental Agencies or third parties (including employees of either party)) on account of taxes, claims, fines, debts, personal injuries, death or damages to property, and without limitation by enumeration all other claims or demands of every character occurring or in anywise incident to, in connection with or rising out of the WORK to be performed by SUBCONTRACTOR.

As evidenced by the emphasis provided in the indemnification provision in the subcontract, Crane was to be indemnified for liability arising from work performed by Ray. Ray was accused of providing defective work at the West Helena and the McKinney, Texas, stores. Proof in the trial of this case was proof of alleged defective workmanship and resulting damages, as well as proof of payment of money by USF&G and Crane in settlement of claims on defective work. The jury was instructed that to find liability, USF&G and Crane had to prove that they were potentially liable

to Wal-Mart for defective work performed by Ray and that the sum paid by USF&G and Crane in settlement of the claims of defective construction was reasonable. The evidence of defective construction was offered to prove that Ray had a duty to indemnify under the contract.

### Allegations Regarding the McKinney Store

No allegations were made against Ray specifically with respect to the McKinney store until the second amended complaint filed July 12, 2001. However, USF&G and Crane allege that allegations on the original complaint were broad enough to include assertions of defective construction by Ray at the McKinney store. USF&G and Crane assert that the original complaint, when considered in total, states a cause of action with regard to the McKinney, Texas, store. In this regard, USF&G and Crane note that paragraph 5 sets out that Crane contracted on eleven stores, including the McKinney, Texas, store and paragraph 12 provides:

> On or about November 13, 1993, Wal-Mart answered the above referenced complaint and filed a counterclaim against Crane alleging, among other things, both breach of contract and negligence in the faulty and defective construction of a number of Wal-Mart's and Sam's Clubs as identified in paragraph 5.

USF&G and Crane also note that the 2600 page defect list referenced in paragraph 17 listing alleged defective construction by Ray on the McKinney store, and that Ray "could have easily reviewed the portion of the defect list related to the McKinney project." USF&G and Crane then allege that paragraph 22, which asserts that the subcontractors breached their duty to indemnify under the subcontracts in the Memphis litigation, shows that collectively the original complaint alleged defective work by Ray on the McKinney store. USF&G and Crane argue that the failure to list the McKinney store in paragraph 2 in reference to Ray was an "inadvertent omission."

Pleadings are to be liberally construed. *Clayborn v. Bankers Standard Ins. Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002). However, "[o]ur rules require fact pleading, and a complaint

must state facts, not mere conclusions, in order to entitle the pleader to relief." *Id.*; Ark. R. Civ. P. 8(a). We look to the underlying facts supporting an alleged cause of action to determine whether the matter has been sufficiently pled. *Country Corner Food & Drug, Inc. v. First State Bank & Trust Co.*, 332 Ark. 645, 966 S.W.2d 894 (1998).

█ It is obvious that Crane knew of alleged defects in the stores beginning at least in 1993. At the very latest, Crane was aware of specific allegations of defects in the masonry construction on the McKinney store in 1994 when destructive testing began. It is also clear that Crane alleged to almost 300 subcontractors, prior to filing the original complaint, that there were allegations of defective construction on all eleven stores. Yet when suit was brought, the complaint named but eighteen subcontractors and matched each subcontractor to the project on which it was alleged liable. Ray was listed as liable on the West Helena store. It must also be noted that Ray's subcontract on the McKinney store was not attached to the original or the amended complaint. Rule 10 of the Arkansas Rules of Civil Procedure discusses form of pleadings, and provides:

> (d) *Required Exhibits.* A copy of any written instrument or document upon which a claim or defense is based shall be attached as an exhibit to the pleading in which such claim or defense is averred unless good cause is shown for its absence in such pleading.

Ark. R. Civ. P. 10(d) (2002). Crane and USF&G now seek to hold Ray liable for contractual obligations contained in a contract that was not attached to the complaint or the amended complaint, but only appears attached to the second amended complaint filed July 12, 2001. No good cause for the failure to attach the contract is alleged, and the requirement is mandatory. The word "shall" has been interpreted by this court to mean mandatory compliance. *Brewer v. Fergus*, 348 Ark. 577, 79 S.W.3d 831 (2002).

██ Neither the original nor the amended complaint constitutes a general allegation of defective work on all the projects naming all the subcontractors. Instead, both the original and the amended complaints are directed at specific subcontractors

connecting each subcontractor with the project on which it was alleged to have provided defective work. It appears quite evident that for reasons of their own, Crane and USF&G chose to identify certain subcontractors and pursue indemnification against those specific subcontractors. Arkansas is a fact pleading state. Ark. R. Civ. P. 8(d) (2002). Therefore, a plaintiff must state facts in the complaint sufficient, if taken as true, to sustain the cause of action. *Faulkner v. Children's Hosp.*, 347 Ark. 941, 69 S.W.3d 393 (2002). They stated no claim against Ray with regard to the McKinney, Texas, store until the July 12, 2001 second amended complaint.

██ ██ USF&G and Crane, however, allege their cause of action is saved by the relation back doctrine. Rule 15 of the Arkansas Rules of Civil Procedure discusses amended and supplemental pleadings, and provides:

> (c) *Relation Back of Amendments.* An amendment of a pleading relates back to the date of the original pleading when:
>
> (1) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (2) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (1) is satisfied and, within the period provided by Rule 4(i) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Ark. R. Civ. P. 15(c) (2002). The purpose of Rule 15(c) is to avoid the dismissal of an amendment on technical grounds if the defendant received notice of the litigation before the statute of limitations expired. *Southwestern Bell Tel. Co. v. Blastech, Inc.*, 313 Ark. 202, 852 S.W.2d 813 (1993). USF&G and Crane allege that Ray had notice by way of the letters demanding indemnification. However, neither the original nor the amended complaint mention Ray with regard to McKinney store. A claim for relief is set out in a complaint. The letters from 1994 and 1995 do not constitute a complaint.

▪ Both the original and the amended complaints allege that Ray is liable for defective work in West Helena. Neither the original, nor the amended complaint makes any reference whatever to Ray and the McKinney store. The subcontract with Ray regarding the McKinney store, which was attached to the second amended complaint in 2001, and therefore was obviously in the possession of USF&G and Crane, was not attached to the complaint as required by Ark. R. Civ. P. 10. Moreover, although 278 subcontractors where notified of alleged defective work, the original complaint only names 18 subcontractors, and the amended complaint further reduces the number of named subcontractors to 14. These facts simply make it even more obvious that Ray was not sued, and was not intended to be sued, on the McKinney store in the original or the amended complaints. The conduct, transaction, or occurrence set forth in the original complaint with respect to Ray was regarding the West Helena store. There is nothing in the original or amended complaints regarding Ray and the McKinney store to allow relation back. There was no attempt to set forth a cause of action with respect to Ray and the McKinney store. In any event, the relation back doctrine should not be allowed when it operates to cut off a substantial right or defense to a new matter introduced by the amendment even when connected to the original cause of action. *Ozark Kenworth, Inc. v. Neidecker*, 283 Ark. 196, 672 S.W.2d 899 (1984). It is also troubling that the allegations Ray was defending in West Helena amounted to damages alleged to be $16,756.00, and thirty-two days before trial, Ray received the second amended complaint alleging $2,614,431.00, in damages on the McKinney store.

▪ We must conclude that Crane, and later USF&G, decided to sue specific subcontractors on specific projects for reasons that are not stated. Initially, there were 278 subcontractors that might have been sued based on the allegation USF&G and Crane now make that the suit was a general one for all work on all the projects. The pleadings do not support the assertion that this was a general suit on all the projects. Crane sued but eighteen subcontractors in the original complaint and specifically laid out the liability by subcontractor and project. In the amended com-

plaint, the number of subcontractors was even more reduced, down to fourteen. Again, in the amended complaint, the subcontractors were matched to projects and work performed. No cause of action against Ray with respect to the McKinney, Texas, store was stated until July 12, 2001.

## Statute of Limitations

Ray alleges the action against it regarding work on the McKinney, Texas, store was barred by the three year statute of limitations in Ark. Code Ann. §16-56-105 (1987). The case submitted to the jury on Ray was limited solely to the indemnity agreement and any breach of that agreement. The indemnity agreement is set out in writing in the subcontract in paragraph IV. The alleged breach of a written contract is controlled by the five-year statute of limitations set out in Ark. Code Ann. § 16-56-111 (Supp. 2001). *Foreman Sch. Dist. v. Steele*, 347 Ark. 193, 61 S.W.3d 801 (2001). The three year statute of limitations in Section 16-56-105 applies to oral contracts. *Zufari v. Architecture Plus*, 323 Ark. 411, 914 S.W.2d 756 (1996); *East Poinsett Co. Sch. Dist. v. Union Standard*, 304 Ark. 32, 800 S.W.2d 415 (1990).

A cause of action accrues the moment the right to commence an action comes into existence, and the statute of limitations commences to run from that time. *Courtney v. First Nat'l Bank*, 300 Ark. 498, 780 S.W.2d 536 (1989). An action on a contract for indemnity accrues when the indemnitee is subjected to damage on account of its own liability. *Larson Mach., Inc. v. Wallace*, 268 Ark. 192, 600 S.W.2d 1 (1980). To be subjected to damage, there must be a loss. *Id.* An indemnitor's obligation to reimburse against loss does not become due until after the indemnitee has paid damages to a third party. *Cherry v. Tanda, Inc.*, 327 Ark. 600, 940 S.W.2d 457 (1997); *Larson, supra.*

On August 19, 1996, Crane wire transferred the settlement funds to Wal-Mart. This constitutes the required loss, and the cause of action on the indemnity agreement accrued on August 19, 1996. Crane had five years from that date, or until August 19, 2001, to bring suit on the indemnity agreement. The second amended complaint filed July 12, 2001, included specific

allegations about Ray as a subcontractor working on the McKinney, Texas, store and asserted that Crane had suffered damages in the amount of $2,614,431.00, as a consequence of Ray's work. Paragraph 20 of the second amended complaint sets out the indemnity provision in the subcontract. Paragraph 29 of the second amended complaint asserts that demand has been made on the subcontractors for indemnification, and paragraphs 35 through 37 assert that the indemnification agreement was breached. Contrary to Ray's assertion, the statute of limitations is not a bar to suit on the indemnification provision.

### Affirmative Defense

█ Ray asserts that Ark. Code Ann. § 16-56-112 is a statute of repose that bars this action. However, USF&G and Crane argue this court need not address the issue of the statute of repose because Ray failed to plead it as an affirmative defense and therefore waived it. Rule 8(c) of the Arkansas Rules of Civil Procedure provides:

> (c) *Affirmative Defenses.* In responding to a complaint, counterclaim, cross-claim or third party claim, a party shall set forth affirmatively accord and satisfaction, arbitration and award, comparative fault, discharge in bankruptcy, duress, estoppel, exclusiveness of remedy under workmen's compensation law, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, set-off, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

Ark. R. Civ. P. 8(c) (2002). A statute of repose is not a listed affirmative defense in Ark. R. Civ. P. 8(c). However, the rule also encompasses "any other matter constituting an avoidance or affirmative defense." *Id.*

█ A statute of repose is a statute of duration, and provides a date upon which the action no longer exists, whether it has accrued by that date or not. It entirely cuts off an injured person's right of action even before it accrues. *Okla Homer Smith Mfg. Co.*

*v. Larson & Wear, Inc., 278 Ark. 467, 646 S.W. 2d 696 (1983); Rogers, supra.* A statute of repose is neither an avoidance nor a defense to a cause of action because the cause of action does not exist once the period of duration is passed. While a statute of limitation allows a party to avoid suit, a statute of limitations does not affect the validity of the claim. However, once the period of duration under a statute of repose is expired, there is no suit to avoid, because the statute of repose extinguishes the cause of action, and the failure to plead the statue of repose as an affirmative defense could not resurrect a cause of action that no longer exists.

A statute of limitation is a procedural device that operates as a defense to limit the remedy available from an existing cause of action. *First Methodist Church of Hyattsville v. United States Gypsum Co.*, 882 F.2d 862 (4th Cir. 1989); *see also Davidson · v. Hartsfield*, 250 Ark. 1072, 468 S.W.2d 774 (1971). A statute of limitation bars the remedy. *Minn. Ming & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999). It does not extinguish the underlying obligation. *Harris v. Mosley*, 195 Ark. 62, 111 S.W.2d 563 (1937). A statute of repose, on the other hand, cuts off the right to a cause of action before it accrues. *Okla Homer, supra.* In *First Methodist Church, supra,* the Fourth Circuit Court of Appeals stated:

> A statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined period of time. *Id.* Statutes of limitations are motivated by considerations of fairness to defendants and are intended to encourage prompt resolution of disputes by providing a simple procedural mechanism to dispose of stale claims. *Harig v. Johns-Manville Products Corp.*, 284 Md. 70, 75, 394 A.2d 299 (1978). Statutes of repose are based on considerations of the economic best interests of the public as a whole and are substantive grants of immunity based on a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists. *Whiting-Turner*, 304 Md. at 349-50, 499 A.2d 178.

*First Methodist Church*, 882 F.2d at 866. As agreed to by USF&G in oral argument, a statute of repose creates a substantive right in those protected to be free from liability after a legislatively-deter-

mined period of time. A statute of repose is typically an absolute time limit beyond which liability no longer exists and is not tolled for any reason, because to do so would upset the economic balance struck by the legislative body. *Florence County Sch. Dist. #2 v. Interkal, Inc.* 348 S.C. 446, 559 S.E.2d 866 (2002). In *Florence County Sch. Dist.*, the court held that the statute of repose barred suit for contribution in tort. The statute of repose is a substantive grant of immunity derived from a legislative balance of economic considerations affecting the general public and the respective rights of potential plaintiffs and defendants. *Carven v. Hickman*, 135 Md. App. 645, 763 A.2d 1207 (2000) (citing *First Methodist Church, supra).* Unlike a limitation provision which merely makes a claim unenforceable, a condition precedent establishes a time period in which suit must be brought in order for a cause of action to be recognized. If the action is not brought within the specified period, the plaintiff "literally has no cause of action. The harm that has been done is *damnum absque injuria*—a wrong for which the law affords no redress." *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 199, 293 A.2d 662, 667 (1972). Unlike a limitation provision which merely makes a claim unenforceable, a condition precedent establishes a time period in which suit must be brought in order for the cause of action to be recognized. *Boudreau v. Baughman*, 322 N.C. 331, 340-41, 368 S.E.2d 849, 857 (1988). If the element of time within which the claim must be brought cannot be satisfied, the claim simply cannot be maintained. *Hargett v. Holland* 447 S.E.2d 784 (N.C.1994). "A statute of repose constitutes a substantive definition of rights rather than a procedural limitation provided by a statute of limitation." *Langley*, 313 S.C. at 404 (citing *Bolick v. Am. Barmag Corp.*, 306 N.C. 364, 293 S.E.2d 415 (1982).

 The statute of repose is not an affirmative defense, and therefore, the failure to plead it as an affirmative defense is not a bar to raising the issue on appeal. We must now determine whether the statute of repose applies to a suit in contractual indemnification.

## Statute of Repose

█ █ Ray argues that Ark. Code Ann. § 16-56-112 (Supp. 2001) constitutes a statute of repose that extinguished the cause of action before the second amended complaint was filed on July 12, 2001. Section 16-56-112(a) provides:

> (a) No action in contract, whether oral or written, sealed or unsealed, to recover damages caused by any deficiency in the design, planning, supervision, or observation of construction or the construction and repair of any improvement to real property or for injury to real or personal property caused by such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, or observation of construction or the construction or repair of the improvement more than five (5) years after substantial completion of the improvement.

A statute of repose is "[a] statute that bars a suit a fixed number of years after the defendant acts in some way (as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered any injury." *Black's Law Dictionary* 1423 (7th ed. 1999). Whether or not an injury has occurred has no effect on a statute of repose. *Rice v. Dow Chem. Co.*, 124 Wash.2d 205, 875 P.2d 1213 (1994). A statute of repose eliminates a cause of action altogether after the passage of the prescribed period. *Marston v. Juvenile Justice Cntr. of the 13th Jud. Dist.*, 88 S.W.3d 534 (Mo. Ct. App. 2002).

█ Section 16-56-112, is a statute of repose. *Rogers v. Mallory*, 328 Ark. 116, 941 S.W.2d 421 (1997). In *East Poinsett, supra*, this court stated that section 16-56-112 "clearly establishes a maximum five years period within which an injured party can bring suit against a person who deficiently constructs or repairs an improvement to real property." *East Poinsett*, 304 Ark. at 34. In *Rogers, supra*, this court stated:

> We have recognized that the effect of § 16-56-112(a) and statutes similar to it "is to cut off entirely an injured person's right of action before it accrues," even "if it does not arise until after the statutory period has elapsed." *Okla Homer Smith Mfg. Co. v. Larson & Wear, Inc.*, 278 Ark. 467, 470, 646 S.W.2d 696, 698

(1983), quoting Annotation, 93 A.L.R.3d 1242, 1246 (1979). Thus, § 16-56-112(a) is more accurately described as a "statute of repose" rather than a "statute of limitations." *See* J.W. Looney, *When Third Means Fourth, Contract Includes Tort, and a Five-Year Statute of Limitation Actually Leaves Only Three Years or Less to File Suit: The Strange Saga of the Arkansas "Statute of Repose" in Construction Cases*, 1993 ARK. L. NOTES 87, 90 n. 15.

*Rogers*, 328 Ark. at 120. Under Ark. Code Ann. § 16-56-112, suit is barred five years "after substantial completion of the improvement." Ark. Code Ann. § 16-56-112(a).

The work carried out by Ray on the McKinney store was completed in 1992, and the construction of the McKinney store was completed on June 1, 1993. Thus, at the latest, the five years under Ark. Code Ann. § 16-56-112 ran on June 1, 1998. Suit was not filed on Ray's work on the McKinney, Texas, store until July 12, 2001.

The question then becomes whether section 16-56-112(a), applies to an action for breach of the indemnity provision contained in a construction contract. Relevant to this case, section 16-56-112(a), extinguishes any cause of action to recover damages caused by deficiency in the construction of an improvement to real property. The indemnity provision provides a cause of action for "claims or demands of every character occurring or in anywise incident to, in connection with or rising out of the WORK to be performed by SUBCONTRACTOR."

In *Okla Homer, supra*, this court stated that Act 42 of 1967, establishing Ark. Code Ann. § 16-56-112, was intended to "establish limitations for 'any' deficiency in work arising out of a construction contract." *Okla Homer*, 278 Ark. at 471. In *Okla Homer*, this court also stated:

> [W]e construe the phrase 'in contract' in § 37-237, in the light of the legislative purpose and the language of the preamble to Act 42, to extend the coverage of §37-237 to all actions which arise out of a construction contract where property damage has allegedly resulted from any deficiency in design, planning, supervision or observation of construction or the construction and repair of any improvement to real property.

*Okla Homer*, 278 Ark. at 471. This court further stated in *Okla Homer*:

> Here, it is obvious that the legislative purpose was to enact a comprehensive statute of limitations protecting persons engaged in the construction industry from being subject to litigation arising from work performed many years prior to the initiation of the lawsuit. Similar statutes were enacted in many states during the 1960's.

*Okla Homer*, 278 Ark. at 470. In *Okla Homer*, this court discussed whether the protection of Ark. Code Ann. § 16-56-112 applied not only to causes of action for deficiencies in construction stated in contract, but also applied to causes of action for deficiencies in construction stated in negligence. In *Okla Homer*, this court held that the statute of repose did apply to an action in negligence for damages due to defective construction. In *East Poinsett, supra,* this court stated:

> This is our first opportunity to address §16-56-112 and its effect, if any, on §16-56-105(3) and other statutes of limitations.[fn1] Before the enactment of §16-56-112, a third party could sue architects and people in the construction and building field at any time after completion of work, so long as the third party brought suit within the applicable statute of limitations period commencing from when an injury or breach occurred. In recognition of this fact, States, including Arkansas, adopted statutes to limit the time within which actions could be brought against persons in the construction and building field.

*East Poinsett*, 304 Ark. at 33-34. At issue in *East Poinsett* was a suit by a third party beneficiary school district to an oral contract between the school district's insurer and a construction company that agreed to repair damage to a roof from a storm. This court held that Ark. Code Ann. § 16-56-112 does not extend the three year statute of limitations on oral contracts set out in Ark. Code Ann. § 16-56-105(3) (1987).

While *Okla Homer* contains the statement that Ark. Code Ann. § 16-56-112 protects "persons engaged in the construction industry from being subject to litigation arising from work performed," and *East Poinsett* contains the statement that Ark. Code Ann. § 16-56-112 bars actions "brought against persons in the

construction and building field," neither case involved an indemnity provision contained in a construction contract.

 Proof of defective construction was offered by Crane and USF&G to prove the duty to indemnify and to prove damages. Proof of sums paid by Crane & USF&G in settlement of the federal litigation was also offered. Section 16-56-112 provides a statute of repose on actions to recover damages caused by a deficiency in the construction of an improvement to real property. At issue before us is an action alleging breach of the indemnity provision in the construction contract, or in other words, an alleged breach of the contractual obligation to indemnify. This case is not one based on damages from alleged defective construction. Therefore, the statute of repose is not applicable to this case. If the legislature wants to expand the protection afforded by the statute of repose to include indemnity actions arising from construction work, it may wish to amend the statute.

Ray also raised the arguments of laches and estoppel; however, Ray later conceded these arguments were waived.

### Motion to Strike

 USF&G and Crane filed a motion to strike a portion of argument in Ray's reply brief, alleging the argument regarding whether Crane noticed Ray was not preparing a defense to allegations of defects in the McKinney, Texas, store was unsupported by the record. Whether Crane knew Ray was not preparing a defense regarding the McKinney, Texas, store was an issue outside the record, and the motion to strike this portion of the reply brief is granted.

### Prejudgment Interest

 USF&G cross-appeals asserting the trial court erred in denying prejudgment interest. In *Ozarks Unltd. Resources Coop., Inc. v. Daniels*, 333 Ark. 214, 969 S.W.2d 169 (1998), we stated:

> Prejudgment interest is compensation for recoverable damages wrongfully withheld from the time of the loss until judgment. Prejudgment interest is allowable where the amount of damages is

definitely ascertainable by mathematical computation, or if the evidence furnishes data that makes it possible to compute the amount without reliance on opinion or discretion. *Woodline Motor Freight, Inc. v. Troutman Oil Co.*, 327 Ark. 448, 938 S.W.2d 565 (1997). Where prejudgment interest may be collected at all, the injured party is always entitled to it as a matter of law. *TB of Blytheville v. Little Rock Sign & Emblem*, 328 Ark. 688, 946 S.W.2d 930 (1997) (*citing Wooten v. McClendon*, 272 Ark. 61, 612 S.W.2d 105 (1981)).

*Ozarks Unltd.*, 333 Ark. at 224. In *Mitcham v. First State Bank of Crossett*, 333 Ark. 598, 970 S.W.2d 267 (1998), this court further stated, "As we have held repeatedly, if the damages are not by their nature capable of exact determination, both in time and amount, prejudgment interest is not an item of recovery." *Mitcham*, 333 Ark. at 601-02. Where the requirements of prejudgment interest can be met, the injured party is always entitled to it as a matter of law. *TB of Blytheville v. Little Rock Sign Emblem*, 328 Ark. 688, 946 S.W.2d 930 (1997).

 The amount of the alleged damages were hotly contested from the beginning of the case to the end. Between what Wal-Mart alleged was due on masonry defects and what was awarded the jury varied by over two million dollars. Wal-Mart alleged $3,705,818.00 in damages, $1,500,000.00 was recovered. The controversy over what was done correctly and what was not done correctly by Ray on the store was never agreed to by the parties. This is not a case where something has been destroyed, the cost of which is fixed. For example if an industrial generator costing $250,000.00 was destroyed by the defendant's conduct the cost would be fixed. The cross appeal is denied.

This case is affirmed on direct appeal. The cross appeal is denied, and the motion to strike is granted.

GLAZE, J., not participating.