ELKINS *v.* HUNTINGTON-MIDLAND HIGHWAY DISTRICT.

Opinion delivered December 24, 1923.

1. HIGHWAYS—CLAIMS FOR PRELIMINARY EXPENSE—FRAUD.—Claims based on contracts for preliminary expenses of a highway district *held,* under the evidence, not to be fraudulent.

2. HIGHWAYS—LIABILITY OF DISTRICT FOR PRELIMINARY EXPENSES.— Persons contracting with a highway district, whose project was

subsequently abandoned, *held* to have known, when they entered into contracts for work to be done, that the district would not be liable unless the road was constructed, and that, if the work was abandoned, the district would be liable only for preliminary expenses.

3. HIGHWAYS—PRELIMINARY EXPENSES—BURDEN OF PROOF.—In a suit to enforce claims against a highway district, after the undertaking had been abandoned, the burden was on the claimants to show that their claims were for preliminary expenses.

4. HIGHWAYS—ABANDONMENT OF PROJECT—CLAIMS FOR SUBSEQUENT WORK.—In a suit against a highway district which had abandoned the proposed improvement, claims which accrued after the preliminary work had been done cannot be allowed as preliminary expenses.

5. HIGHWAYS—ABANDONED IMPROVEMENT—ENGINEER'S CHARGE.—In a suit to enforce claims for preliminary expenses against a highway district which had abandoned the proposed improvement, charges of an engineer held to be for more than was necessary to determine whether the benefits contemplated exceeded the cost of the improvement.

6. HIGHWAYS—ABANDONED IMPROVEMENT—LOAN FOR PRELIMINARY EXPENSES.—In a suit to enforce claims for preliminary expenses against a highway district, after it had abandoned the proposed improvement, a loan to the district made for the purpose of paying valid preliminary expenses *held* binding.

Appeal from Sebastian Chancery Court, Greenwood District; *J. V. Bourland*, Chancellor; reversed in part.

*John F. Clifford*, for appellant, Elkins.

Considering the claim of Elkins as strictly preliminary expenses, the certificates of indebtedness held by him were proper charges against the district. Act No. 298 of 1920, §§ 3, 16, 22, 23, 29; 149 Ark. 476; 119 Ark. 188. The action of the county court in approving the action of the commissioners was a valid exercise of the discretion placed in that court, and it will be presumed to have acted upon facts sufficient to maintain its action. 38 Ark. 156. No appeal from its action was taken, and, there being no allegations of fraud, accident or mistake alleged or proved, under such circumstances the correctness of its judgment cannot be attacked collaterally. 37 Ark. 540; 55 Ark. 275; 107 Ark. 142. As affecting the validity of the meeting of the board and the acts done, it was not

essential that the minutes thereof be signed, or even that they be recorded. It was susceptible of parol proof. 103 Ark. 283; 71 Ark. 438; 79 Ark. 45, and cases cited.

*G. L. Grant* and *Geo. W. Johnson,* for appellants.

The commissioners were not required by law to keep a written record of the proceedings of their board meetings. 103 Ark. 283; 126 Ark. 622. However, a party cannot impeach a record which he himself introduces in evidence. Counsel for the receiver introduced the minute book of the meetings of the board. He cannot introduce it for one purpose and discard it for another, and is estopped from questioning its accuracy or its authenticity. 52 N. W. 341; 50 Am. Dec. 394. The action of the county court in relation to the claims was the action of a judicial tribunal which should have been respected by the chancellor. The burden of showing that the allowances made were inequitable and unjust was upon the parties attacking the allowances. 149 Ark. 476. Where services are rendered under a defectively executed contract, and such services are accepted, the contract is ratified. The commissioners accepted the plans, specifications and estimates from appellant Carter and submitted them to the county court for approval. That amounted to a ratification. 129 Ark. 211.

*Pryor & Miles,* for the receiver.

1. There was no order of the county court either authorizing or approving the loan of the money received from appellant. Section 16 of the act creating the district. The domicile of the district was Huntington. Section 4, *Id.* The negotiation of the loan at Little Rock was not the action of the board at its domicile.

2. All parties dealing with the commissioners of the district were bound to take notice of the limitation on the power of the commissioners imposed by the act. 94 Ark. 585; 152 Ark. 511.

3. It is clear from the evidence that the commissioners acted individually, or, more correctly speaking, that one member, now deceased, transacted all of the

business for the district. They could act only as a board. 64 Ark. 490.

WOOD, J. The Huntington-Midland Highway District (hereafter called district) was created by act No. 298 at the special session of the Legislature of 1920. The third section of that act provides for the appointment of three commissioners by the county court of Sebastian County. The following commissioners were duly appointed: Frank McCormack, John W. Jasper and W. P. Fitzgerald, who duly qualified as such and organized themselves into a board of the district, as provided in § 5 of the act. Section 4 of the act provides that the commissioners and their successors in office shall compose a body corporate under the name of the district, and, under such name, the district might contract and sue and be sued. The domicile of the corporation was fixed at Huntington, in the Greenwood District of Sebastian County. Carter & Knoch were employed by the board as engineers of the district. They made a preliminary survey and filed plans and specifications, with an estimate of the cost, etc. The board also employed the firm of Covington & Grant as attorneys for the district. The plans were approved by the county court, as required by the act, and the board proceeded to assess the benefits under the terms of the act.

Section 16 of the act, among other things, provides: "In order to hasten the work, the board may borrow money and issue its negotiable evidence of indebtedness for its payment, in such form as the board may adopt, and may issue bonds with interest coupons attached, or in such other form as the board may adopt, and dispose of them in such manner and for such amount as the board may deem best, subject to the approval of the county court."

Section 29 of the act provides: "If, for any reason, the improvements herein contemplated are not constructed, all obligations incurred by the commissioners for preliminary work of any kind shall be a lien and a

charge on the lands of the district, and an assessment shall be made and a tax levied, as hereinabove provided, to that end, that the same may be paid."

On the 29th of December, 1920, the board of commissioners made a report to the county court, giving a full account of the proceedings of the board, from its organization to that date, and showing, among other things, that the board had entered into a contract for the construction of the work contemplated by the act, and that it had entered into a contract for the sale of the bonds as contemplated by the act. The report stated that Chas. B. Thweatt had been employed to prepare the necessary transcript of proceedings incident to the issuance of bonds, under a written contract, which it set forth. A contract had also been entered into with Carter & Knoch and with the attorneys, Covington & Grant, as heretofore mentioned. The report contained the following recital: The board of commissioners has incurred various items of expense, an itemized list of which is hereto attached and made a part hereof, for the making of the plans and for the preliminary expenses." The items of expense enumerated in this report are as follows:

| | |
|---|---|
| Salary of assistant secretary | $1,050.00 |
| C. B. Thweatt, attorney fee | 500.00 |
| Cash borrowed from M. W. Elkins | 3,000.00 |

The $3,000 cash received has been spent as follows:

| | |
|---|---|
| Paid H. R. Carter, engineering fee | $1,500.00 |
| Commissioner's fees | 180.00 |
| Telephone messages | 10.00 |
| Covington & Grant, attorneys' fees | 665.00 |
| Geo. B. Rose, attorney fee | 100.00 |
| Salary to assistant secretary | 450.00 |
| Incidentals | 95.00 |

The order of the county court approving the report of the commissioners is as follows:

"On the 29th day of December, 1920, come the commissioners for Huntington and Midland Highway Dis-

trict and file and present to the court their report as to proceedings and actions had and done by them; and, after hearing evidence in the matter, and being familiar with said proceedings through the knowledge of the judge presiding, and after being fully advised and informed:

"The court hereby ratifies, approves and confirms the organization of the commissioners on February 25 by electing Frank McCormack, president, Jno. W. Jasper, secretary, and W. P. Fitzgerald, treasurer, and the election of Henry Lane as assistant secretary at a salary of $150 a month; also approves the selection of engineers and the contract made with them; also the selection of attorneys, and the purchase of the record book; also approves the selection of Jas. A. Chadwick, on December 11, as president, to fill the vacancy caused by the resignation of Frank McCormack; also approves assessment of benefits as made and filed by the commissioners, and their action in sustaining said assessment on the date of the hearing had; also approves the construction contract entered into with Hogan Construction Company; also approves the contract for the sale of bonds entered into with Gordon N. Peay, Jr.; also approves the various items of expense incurred, as shown by the report of the commissioners; also approves the contract of employment of Chas. B. Thweatt to prepare transcript of proceedings incident to the issuance of bonds; and fully ratifies and approves all actions and proceedings had, done, and taken by said commissioners, as shown by the report this day filed with the court."

After the above proceedings were had, this action was instituted in the Sebastian Chancery Court by M. W. Elkins on the 20th of November, 1920, against the district and its commissioners and against H. C. Lane and Covington & Grant. He alleged, among other things in his complaint, that the district was indebted to him in the sum of $3,000, with interest, as evidenced by certain

certificates, which he attached and made exhibits to his complaint. These certificates amounted in the aggregate to the sum of $3,000. He alleged that he had acquired them before maturity and for a valuable consideration; that they were issued by the district to the various parties named therein for preliminary expenses of the district; that Lane had indorsed the certificates issued to him for the amount of such certificates; that Grant had indorsed the certificate issued to Covington & Grant, and that they had thereby become liable to plaintiff Elkins for these amounts; that the plaintiff had a contract with the district to purchase its bonds issued in the sum of $100,000; that the district breached this contract and failed to deliver the bonds, to plaintiff's damage in the sum of $2,000; that the sums due the plaintiff on the certificates were long past due, and that the district and its commissioners refused to pay the same; that the district was insolvent, and that plaintiff had no adequate remedy at law. He prayed for judgment in the sum of $3,000 against the district, and that he have judgment also in the sum of $450 against Lane, the amount of the certificate indorsed by him; and that he have judgment against Covington & Grant in the sum of $665, the amount of the certificate indorsed by Grant, and also against Grant individually for the sum of $500, the amount he guaranteed to pay on this certificate, and that a receiver be appointed to wind up the affairs of the district and to levy and collect the tax on the lands of the district to satisfy the judgment rendered against it.

Later on, in February, a suit was also instituted by the Midland Valley Railway Company against the district and its commissioners. The action of the railroad company called in question the validity of the act under which the district was created and the assessments of benefits thereunder, alleging various reasons why the assessment of benefits levied against its property should be enjoined, and prayed for an injunction. The proceedings in that suit are not germane to any question

arising in this action further than that, in the answer to the railroad suit, the district and its commissioners alleged, among other things, that "because of objection being urged to the building of said road, and because of the great expense connected with its construction, they have abandoned the project, and ask the court to consolidate this cause with another cause pending in the chancery court looking to the dissolution of the district and the liquidation of its affairs." The pleadings in that case were made a part of the record in this case.

In the answer to the suit by Elkins, the district and its commissioners admit the indebtedness claimed by Elkins, but denied that he was an innocent purchaser. They alleged that, before these certificates were issued and before Elkins had purchased the same, he had agreed to buy the bonds of the district, and, as a part of the contract of purchase, he had agreed to loan the district a sum sufficient to pay the preliminary expenses of the district, which was to be repaid at the time the bonds were delivered; that, at the time the certificates were issued, the commissioners of the district and Grant, the attorney of the district, met with the plaintiff at his office in the city of Little Rock, at which time the plaintiff caused the certificates to be prepared by his stenographer, and directed the commissioners to sign the certificates and have them indorsed by the persons to whom they were payable and then to be sent to him through the bank with draft attached, all of which was done; that the plaintiff therefore knew the purpose of the certificates, and, being charged with such knowledge, he was not an innocent purchaser. They further alleged that the plaintiff at the time explained that he desired the indorsements of the commissioners on the certificates merely for the purpose of creating evidence of the indebtedness of the district represented by the certificates, and to show that the amounts thereof had been paid to the persons in whose favor the certificates were drawn, and not for the purpose of creating any liability against the

individual indorsers; that the indorsements of the commissioners of the district were had under these circumstances, and that they were not liable.

Grant answered, and admitted that he had guaranteed the sum of $500 to the plaintiff, but alleged that he should not be required to pay the same unless the amount could not be collected from the district, inasmuch as he was the attorney for the district, and the district was due his firm more than that amount, as shown by the certificate issued to his firm. The commissioners further answered that there was no money in the treasury of the district to pay the amount claimed as preliminary expenses, and alleged that they would be unable to collect the assessments, inasmuch as serious objection had been urged against the improvement, and they alleged that it was to the best interest of all concerned and the taxpayers of the district to abandon the project. They therefore also prayed the court to appoint a receiver to take over the affairs of the district, and with directions to levy an assessment to pay the indebtedness of the district.

Upon the above pleadings the court appointed a receiver, who was also appointed master, who executed a bond and entered upon the discharge of his duties as such. All claims against the district were ordered filed with the receiver, and he was directed, as master, to take testimony, after due notice to the claimants, and to make a report, with his recommendations, to the court.

Hugh R. Carter, as surviving partner of the firm of Carter & Knoch, filed a claim for $876.67. Lane filed a claim for $1,350, and C. B. Thweatt filed a claim for $600, and certain other small claims were filed. In the receiver's report concerning these claims, among other things, he said: "That M. W. Elkins has filed a claim for $3,000, based upon eight certificates, purported to have been signed by the three commissioners. That it is the understanding of your receiver, from talking with the commissioners, that there was never at any time any resolution adopted by the board authorizing any mem-

ber of the board of commissioners to borrow said money; and that said money was not used, as far as your receiver has been able to learn, for the use or benefit of said district, and your receiver submits the validity of said claim to the court without making any recommendation."

In support of the allegations of his complaint, Elkins introduced his verified account against the district for $3,000 and the certificates issued to various parties by the district, through its commissioners, purporting to be signed by them for the district. All of these certificates, except the certificate of $1,500 to Carter & Knoch and the sum of $765 to Covington & Grant, specify that they were issued "for preliminary expenses."

Elkins testified that he entered into a contract with the commissioners of the district for the purchase of its bonds. He advanced $3,000 under the contract "for preliminary expenses," which transaction was closed, and the warrants, numbered from one to eight, as evidenced by the certificates already alluded to, were executed in his office in Little Rock, upon the date shown on the face of those warrants. He witnessed the execution of the warrants by the commissioners. The commissioners were present with their attorney, Mr. Grant. The commissioners asked the witness to give them a check the day the warrants were executed. He told the commissioners to go back and hold their meeting in their own county, at the domicile of the district, allow the claims, attach them to a draft, and witness would pay the same. They did that. He identified the draft, which was signed by McCormack, Jasper and Fitzgerald, the commissioners, drawn upon the witness through the Southern Trust Company at Little Rock, Arkansas. Witness paid the amount of the draft, the same being sent them through the bank. Witness had never been able to obtain payment of the certificates. The understanding was that the $3,000 was to be used by the commis-

sioners "for preliminary expenses." The amount covered office equipment, engineering fees, attorneys' fees, clerk hire, and items of that kind. It was all to be strictly "preliminary expense." The commissioners wanted witness to advance them $5,000, but they could not show witness where they owed the sum of $5,000 as preliminary expenses, and he would not let them have that sum. They could only show an amount for preliminary expenses in the sum of $3,000. On cross-examination he stated that he didn't see the commissioners sign the draft for the $3,000, which witness paid, but he was acquainted with their signatures and knew that the commissioners had signed the draft; that the signatures on the draft were the same as the signatures on the warrants and certificates, which witness did see the commissioners sign. "The gist of the whole transaction," says the witness, "is that I loaned the district $3,000 for preliminary expenses, which I have never gotten back, or any part of it," and the district owes the witness that sum, plus the interest from the date of the warrant.

G. L. Grant testified that he was a practicing lawyer at the Fort Smith bar and a member of the firm of Covington & Grant, attorneys for the district. He handled the legal affairs of the district. Elkins offered to prove by him that he was present at a meeting of the board of commissioners when a contract was executed with Elkins for the purchase of bonds; that he identified what purported to be the contract, and recognized the signatures to the contract. He saw the commissioners sign the identical paper which was offered in evidence. The court excluded this testimony.

Carter testified, concerning his claim, that he was employed under regular contract with the commissioners, which contract was made a part of the record; that he filed his bond as required by the contract, which was duly approved; that he proceeded to make the survey and preliminary plans and specifications, and organized

his field and office forces; that he incurred a great deal of expense, prepared all maps, for the use of the field party. He specified minutely the various things that were done by his firm, and concluded by saying: "All of which was necessary to determine whether the project was feasible from an economical standpoint and the location of the road," which was to be five and a quarter miles in length. The surveys covered approximately ten miles, and the total expenditures, without any compensation to the witness, were $2,076.63. He introduced an itemized statement of his expenses, and testified that he put in considerable time on the work, for which no charge was made. The $1,500 warrant issued by the district in favor of Carter & Knoch was given the witness by the board because the district had no available funds, at the time the work was completed, to pay his fee in accordance with his contract. The commissioners stated that they didn't have the cash, but had sold their bonds to M. W. Elkins with the understanding that he would take up the warrant for the board and pay witness the cash called for, which was a payment of $1,500 on account of engineering due on the contract. Elkins paid witness the $1,500 for the warrant, and it was indorsed over to him without recourse. All services rendered by the witness were preliminary.

Chas. B. Thweatt testified that he was a duly licensed attorney at law, and, as such, entered into a written contract with the district by the terms of which he was employed to prepare a transcript of all proceedings had and done incident to the issuance of bonds of the district; that he was to receive pay for his services in the sum of $500; that, in pursuance of the contract, he had prepared a transcript of all proceedings had and done incident to the issuance of the bonds, and had fully complied with his contract; that nothing had been paid him for his work. He was also directed by the commissioners of the district to prepare an act amending the act by which the district was created. For his services to be

rendered in connection with the drawing of this bill and advice to the commissioners as to the steps necessary to be taken to perfect the organization of the district and show legal authority for the issuance of the bonds, he was to receive as compensation $100. He rendered the services, and nothing had been paid. The written contract entered into between him and the board was introduced in evidence.

The appellees introduced the minute book of the commissioners. That book contained unsigned minutes, purporting to be the proceedings of the commissioners of the district, showing its organization, February 25, 1920, and the employment of Carter & Knoch as engineers, and of Lane as secretary of the district at a salary of $150 per month. The recitals, among other things, show that a meeting was had on May 17, 1920, and that the commissioners had returned from Little Rock, where a deal was closed with Elkins for the purchase of $100,000 bonds, and reciting that certain bills were closed up in certificates of indebtedness and sent to Elkins for payment, amounting in the aggregate to $2,997.50, and directed the secretary to draw a draft on Elkins for the payment of the same, and reciting that the arrangements had been made with Carter & Knoch to advance the sum of $250 to the district, and various other recitals which it is unnecessary to set forth, purporting to be a record of the proceeding of the board from its organization February 25, 1920, to October 30, 1920.

The court held that the minutes of the proceedings, not signed, were not competent. Appellee also introduced Fitzgerald, who testified that he was one of the commissioners. He attended one meeting of the board—didn't remember the date; that was after they had returned from Little Rock, where they had gone to figure on making a contract to get some money. Witness never had notice of any other of the meetings of the board. He stated that he was a figurehead; that he had no knowledge of any certificates being signed at any

meeting of the board and the contract with Elkins. The certificates were signed in Little Rock, if witness was not mistaken. There was no meeting of the board authorizing the contract or authorizing the board of commissioners to sign the certificates of indebtedness. Witness, further on, stated that he thought the contract with Elkins was signed in Little Rock, but it might have been signed in Huntington. Witness had very little to do with it, and didn't remember much about what happened.

McCormack testified that Secretary Lane was never present at a meeting of the board that witness attended. Witness was very busy, and would come in, in the evenings and would call the men in Jasper's office. Witness stated that the meetings he attended were too numerous to mention. He stated that Jasper wrote the supposed minutes. A sworn affidavit of the witness was read in evidence, in which he stated that the negotiations with Mr. Elkins were conducted at Little Rock between the 14th and 19th of May, 1920. Grant was the attorney, and brought a number of matters to the attention of the witness, and witness signed papers while he was there at Little Rock, and didn't remember what they were, or what they contained. He did remember the meetings of the board in May, 1920, when the Elkins matters were up for consideration—May 14, 17 and 29, 1920. Witness had nothing to do with the transaction as shown in the unsigned minutes. They were written in witness' presence, by Jasper. It was in evidence that Jasper, the other member of the board of commissioners, was dead.

The above are substantially the facts upon which the court dismissed the complaint of Elkins against the district and its receiver, and also the claims of Carter, Lane and Thweatt. From that decree is this appeal.

1. The record shows that the improvement contemplated by the creation of this district was not made. Therefore, under § 29 of the act under which the district was created, the obligations incurred "for preliminary expenses" were, by the express terms of the act, made a

charge and a lien on the lands of the district. The record discloses that the chancellor found that most of the contracts upon which the claims were predicated were made away from the county, and that this fact rendered the claims fraudulent and void. We cannot agree with the court in its finding. It could serve no useful purpose to discuss the testimony, which is set forth rather elaborately above. It speaks for itself, and it occurs to us that a decided preponderance of the evidence shows that the claims, to say the least, were not fraudulent. They were based upon contracts with the district which the commissioners had power to make, and, if the improvement contemplated by the act creating the district had been constructed, unquestionably these claims would be valid and binding claims against the district and be a charge and a lien on the lands included within the district. However, since the construction of the improvement contemplated by the act was abandoned, under the express terms of the act the only obligations incurred by the commissioners which are a charge against the district are the obligations for preliminary work. Therefore the only question presented by this appeal is whether or not the claims of appellants were for preliminary expenses.

All parties, in entering into contract with the commissioners for work in the contemplated improvement, were bound to take notice of the law. Therefore the appellants must be held to have known, when they entered into the contract with the commissioners, for work contemplated under the improvement, that these contracts would not be binding on the district unless the improvement were constructed, and that the district, if the work were abandoned, would only be liable for preliminary expenses. This court, in *Thibault* v. *McHaney*, 119 Ark 188, 201, said: "Under the terms 'preliminary expense' would be included * * * attorney's fees as counsel to the board in the preliminary work of organization, etc. such costs as expenses for maps, plans, surveys of land, and for engineer's expenses in preparing the plans and

specifications. In other words, all expenses incident to the investigation by which it is sought to determine whether the value of the benefits to the lands by the improvement contemplated would exceed the cost of such improvement and thereby warrant its completion.''

The burden was upon the appellants to show that their claims were for preliminary expenses. Under the testimony the claims of Lane and Chas. B. Thweatt must pass out, for the reason that there is no testimony whatever to show that their claims were for preliminary expenses. The claim made by Lane was obviously for salary which accrued under his contract long after the preliminary work had been done. Likewise the service rendered by Thweatt was under a contract to take the necessary steps to issue bonds and to secure money for the construction of the improvement. Such services cannot be classed as preliminary expenses, under the rule announced in *Thibault* v. *McHaney, supra.* See also *Gould* v. *Sanford,* 155 Ark. 304. The court was correct in dismissing the claims of C. B. Thweatt and Lane, and the decree in this respect is affirmed.

2. The testimony of Carter shows that the actual expense incurred by him was $2,076.63. He also testified that, in addition to this, he loaned the board $250 in cash ''for preliminary expenses.'' He stated that the charge was made for engineering services, not including any charge for his own time. His testimony was to the effect that all of the services rendered by his firm were preliminary; but his testimony further shows that it included services from March 3, 1920, till October 14, 1920, the date of the *completion of the plans.* The enumeration of what was done and the itemized statement of expenses incurred, attached as an exhibit to his testimony, show that he was actually making a charge for much more than was necessary to determine whether the benefits to the lands contemplated by the improvement would exceed the cost of such improvement. We feel quite sure that the amount paid him, of $1,500 in cash, is most liberal compensation for the value of such ser-

vices as were really incident to the preliminary engineering work on 5¼ miles of roadway which the district was created to construct. His claim therefore should be allowed only to the amount of $250, which he states he advanced to the board "for preliminary expenses."

3. The claim of Elkins is predicated upon an advancement made by him in the sum of $3,000 to the commissioners of the district "to pay preliminary expenses." We are convinced that a decided preponderance of the evidence, indeed practically the undisputed evidence, shows that this sum was advanced by Elkins under his contract with the commissioners to loan them that amount of money to pay the preliminary expenses. This is evidenced by the certificates, the report of the commissioners to the county court to that effect, which was approved by it, and by the testimony of Elkins and Carter. We find no evidence whatever in the record to the contrary, and, as we view the record, there is not a vestige of proof to justify the finding of the trial court that this claim was fraudulent. While the testimony of the commissioners shows that their recollection as to the details of the transaction was very hazy, still even their own testimony does not contradict the positive testimony of witnesses, taken *ore tenus* before the court, and the record evidence to the effect that Elkins' claim was for money which he loaned the district to pay preliminary expenses, and that this money was used by them for that purpose.

While the testimony shows that the negotiations leading to the advancement of this money by Elkins were conducted in Little Rock, yet it abundantly establishes the fact that the transaction was not consummated until the board, in regular meeting, had authorized the borrowing of the money and the drawing of a draft for the amount. This amount Elkins paid to the board for the preliminary expenses, as evidenced by the certificates issued by the board and the draft which Elkins paid.

The trial court seems to have laid great stress on the fact that the records of the proceedings, as set forth

in the minutes of the board, were not all signed, but the testimony, even of the commissioners themselves, shows that the meeting authorizing the borrowing of the money from Elkins and the drawing of a draft on him for the amount of his claim, was held at the domicile of the district in Huntington, Sebastian County, Arkansas. Even if there were no minutes recorded of this meeting, the undisputed proof, as we view the record, shows that it was held and that the board authorized the borrowing of the money from Elkins. Such authority could be proved by parol testimony. *Merchants' & Farmers' Bank v. Harris Lumber Co.*, 103 Ark. 283; *Wolfe v. Erwin & Ward Co.*, 71 Ark. 438; *Stiewel v. Webb Press Co.*, 79 Ark. 45.

In *Gould v. Sanford,* 155 Ark., *supra,* we said: "Preliminary expenses are an essential burden upon the property of the districts, even though the effort to construct the improvement turns out to be abortive. The commissioners had the power to provide for the payment of these expenses, and, even in the absence of express statutory authority, to borrow money for that purpose, where the money is obtained and used for that purpose the district is liable therefor." See also *Gould v. Toland,* 149 Ark. 476.

It follows that the trial court erred in dismissing the claims of the appellant Elkins, and also in dismissing the claim of Carter for $250. In these respects the decree is reversed, and the cause will be remanded with directions to allow the full amount of Elkins' claim and also to allow a decree in favor of Carter for the sum of $250; and, since G. L. Grant admits in his answer that he became liable to Elkins, as guarantor, in the sum of $500, a decree should be entered against him in favor of Elkins for that sum, such sum to be paid in the event Elkins fails to collect that amount on his claim for attorney's fees against the district, and for such other proceedings as may be necessary according to law and not inconsistent with this opinion.