Richard A. PERKINS *v.* CEDAR MOUNTAIN SEWER
IMPROVEMENT DISTRICT NO. 43
of Garland, County, Arkansas

04-79                                              199 S.W.3d 667

Supreme Court of Arkansas
Opinion delivered December 9, 2004

*Rose Law Firm,* by: *Michael N. Shannon,* for appellant.

*Perkins & Trotter, PLLC,* by: *Scott C. Trotter* and *Julie DeWoody Greathouse,* for appellee.

ANNABELLE CLINTON IMBER, Justice. This appeal arises out of a lawsuit in which Richard A. Perkins, an engineer, sued the Cedar Mountain Improvement District of Garland County for breach of contract when the district abandoned a contemplated improvement project. The trial court awarded Perkins damages and ruled that he was entitled to recover the entire amount of damages through a tax levy pursuant to Ark. Code Ann. § 14-92-238 (Repl. 1998). The trial court also awarded post-judgment interest, but declined to award prejudgment interest. Finally, the trial court awarded attorney's fees to Perkins as a prevailing party, but then ruled that those fees were not "preliminary expenses" under section 14-92-238. On appeal, Perkins contends that he was entitled to prejudgment interest and should be able to recover his attorney's fees through a tax levy. On cross appeal, the District contends that the trial court erred when it awarded Perkins damages under the contract as payment was contingent on actual construction of the improvement. As an alternative argument on appeal, the District claims that, even if the contract was not contingent, the trial court erred in ruling that all of the damages awarded to Perkins were "preliminary expenses" under section 14-92-238.

We agree with the District's alternative argument and, therefore, reverse and remand for the trial court to determine the portion of compensatory damages awarded that qualify as "preliminary expenses" under Ark. Code Ann. § 14-92-238. The trial court's judgment is affirmed on all other points.

## 1. Factual Background

In 1996, Cedar Mountain Sewer Improvement District of Garland County ("District") was created pursuant to Ark. Code Ann. §§ 14-92-201 *et. seq.* (2004), for the purpose of constructing

a complete sewer collection and treatment system in the Cedar Mountain area located in Hot Springs, Arkansas.[1] The District initially entered into a contract with Malone & Associates for the engineering services required for the design and construction of the sewer facility. The District's Board of Commissioners ("Board") subsequently voted on June 24, 1997, to terminate the contract with Malone & Associates, and selected a new civil engineering firm, Perkins & Associates, to design the sewer collection and treatment system.[2] On August 21, 1997, Perkins entered into a contract with the District, whereby he agreed to perform various professional engineering services for the design and construction of the District's proposed sewer collection system. The contract indicated that time was of the essence in completing the engineering work. Perkins agreed to perform the engineering work within 150 calendar days or pay liquidated damages of $150 per day for every day after the 150th day. The 150-day provision could, however, be extended for delays caused by regulatory agencies in providing information necessary to complete the engineering work on the project. This contract is the subject of the instant appeal.

On September 12, 1997, the Board sent a letter to the property owners in the District informing them of the contract between the District and Perkins for the design and preparation of the sewer collection system. By November 6, 1997, Perkins wrote a letter to the District's chairman, Billy Wilson, advising him that the work was 75% completed, and attaching a preliminary estimate for the cost of the project in the amount of $1,512,957. In the same letter, Perkins stated that his work should be completed within 30 days; however, because he was still waiting to hear about the possible formation of a Fountain Lake Sewer Improvement District, the Hot Springs portion of the project could potentially be affected. In addition, he had not been notified as to whether the Assembly of God Camp Ground and the Fountain Lake School

---

[1] The County Court of Garland County granted the petition to form the District on February 28, 1996. The District consists of approximately a four-mile stretch on Highway 7 North in Hot Springs.

[2] In November 1999, Richard A. Perkins ("Perkins") transferred his stock in Perkins & Associates to Crafton, Tull & Associates. All of the rights and interest in the contract were assigned to Perkins pursuant to the Stock Purchase Agreement. In addition, an assignment of contract rights was executed transferring and assigning all contractual rights and claims with and/or against the District to Perkins.

District wanted to be included in the sewer design, which would in turn have an impact on the final line locations and sizes in that area.

Communications between the District and Perkins continued over the next several months. On November 20, 1997, Perkins sent a letter advising the District that the major portion of the engineering work with the District was completed, but Perkins needed to know whether treatment of the sewage would be handled by transporting it to the City of Hot Springs or by the District constructing its own treatment plant. In order to avoid further delay, a deadline of January 5, 1998, was given to the District to resolve that issue.[3] In addition, on November 26, Perkins sent a pre-application package to the Arkansas Department of Pollution Control and Ecology that was signed by the District's chairman, Billy Wilson. Attached to the pre-application package was the preliminary engineering report that listed a total estimated price of $1,934,000 for the cost of building the sewer within the district boundaries and a total estimated price of $1,107,000 for the cost of transporting sewage to Hot Springs, or a total price of $3,041,000 for the entire project.

On January 16, 1998, Perkins sent another letter to Billy Wilson asking for authorization to conduct additional engineering services pursuant to Section D of the Contract, which granted Perkins the express authority to perform additional engineering services when approved by the Board. The Board unanimously approved the request. On January 21, 1998, Perkins sent applications signed by Billy Wilson to the Arkansas Soil and Water Commission with an attached preliminary engineering report. Although the 150-day period had already expired,[4] the District sent a letter to Perkins on January 26, 2004, thanking him for his continued work on the project.

On May 1, 1998, Perkins sent a letter and a revised cost estimate to the District stating that the total project cost, including

---

[3] On December 15, 1997, the Board met with the mayor and city manager for the City of Hot Springs regarding the District's options for disposing of its sewage. On January 7, 1998, the Board met and discussed the advantages and disadvantages of connecting into the Hot Springs sewer system.

[4] Over the entire 150-day period established by the contract for performance, Perkins frequently advised the District that the deadline had become unrealistic due to the fact that the negotiations were continuing with the City of Hot Springs, the Assembly of God Camp Ground, and the Fountain Lake School District.

the connection fee for transporting the sewage to the City of Hot Springs, would be $3,533,000. On June 9, 1998, the Board discussed bids from bond houses for financing. Final approval for transporting the sewage to the City of Hot Springs was given by that city's board of directors on July 6, 1998. On July 27, 1998, Ray Owen, the District's assessor, reported to the Board that the final assessments would be available within two weeks.[5] Also on July 27, the Board authorized Perkins to advertise for construction bids. Perkins then sent out the advertisement for bids on August 12, 1998.

On October 1, 1998, the Chancery Court of Garland County[6] entered a temporary restraining order prohibiting the District from selling any bonds or executing any contracts on behalf of the District for a 75-day period, or until the County Court of Garland County had an opportunity to consider a petition for removal filed by a resident of the District on September 23, 1998. Following a recall vote held on November 11, 1998, the County Court ordered the removal of the members of the Board on November 23, 1998. With one exception, a whole new Board was elected, and, by December 14, 1998, the new Board had voted to rescind the assessment. The County Court entered an order rescinding the levy of tax on January 4, 1999.

Meanwhile, Perkins had sent invoices to the District on December 1, 1998, and January 4, 1999, which contained additional charges for interest. He met with the new Board on January 12, 1999, to answer any questions, and on January 14, 1999, he advised the District that if the project were to be discontinued, 100% of the design fee would become due and payable. On February 8, 1999, the Board unanimously voted to dismiss Perkins and Owen from the project, and the District subsequently made no payment to Perkins.

On June 13, 2000, Perkins filed a lawsuit against the District for breach of contract and a lien for "preliminary expenses" pursuant to Ark. Code Ann. § 14-92-238 (Repl. 1998). His complaint also requested prejudgment interest and attorney's fees.

---

[5] The amount of preliminary assessments is not indicated in the minutes. Owen filed the official assessment with the County Clerk of Garland County on September 1, 1998.

[6] By virtue of Amendment 80 to the Arkansas Constitution, which became effective on July 1, 2001, our state courts are no longer chancery and circuit courts. These courts have merged and now carry the designation of "circuit court."

Following a bench trial, the trial court awarded Perkins damages in the principal amount of $212,151.39 and awarded first-lien status to the entire amount under section 14-92-238, thereby insuring payment through a tax levy. In addition, the court ruled that Perkins was entitled to post-judgment interest at the rate of 10% per annum pursuant to Ark. Code Ann. § 16-65-114 (Repl. 2004), but declined to award prejudgment interest. Lastly, Perkins, as the prevailing party, was awarded attorney's fees in the amount of $87,901 and costs of $1,216.01 pursuant to Ark. R. Civ. P. 54(e), with interest on that amount to accrue at the rate of 10% per annum. Although the trial court concluded that the attorney's fees and costs awarded to Perkins were not "preliminary expenses" contemplated by section 14-92-238, and therefore could not be collected through a tax levy, it also ruled that the attorney's fees in the amount of $118,179.50 awarded to the District's attorneys were collectible as "preliminary expenses" under section 14-92-238.

In the instant appeal, Perkins contends that prejudgment interest is a "preliminary expense" under Ark. Code Ann. § 14-92-238. In addition, he claims that his attorney's fees and costs are "preliminary expenses" under Ark. Code Ann. § 14-92-238.

On cross appeal, the District contends that the trial court erroneously awarded Perkins damages for breach of contract because payment under the contract was contingent upon the actual construction of the sewage system. The District also argues that even if the contract was not contingent, the trial court erred in finding that all of the damages awarded to Perkins were "preliminary expenses" under Ark. Code Ann. § 14-92-238. The Arkansas Court of Appeals certified this case to us as an issue of first impression. Thus, this court has jurisdiction pursuant to Rule 1-2(b)(1) of the Arkansas Rules of the Supreme Court.

## 2. Standard of Review

In bench trials, the standard of review on appeal is not whether there is substantial evidence to support the findings of the court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Chavers v. Epsco*, 352 Ark. 65, 98 S.W.3d 421 (2003) (citing Ark R. Civ. P. 52(a); *Reding v. Wagner*, 350 Ark. 322, 86 S.W.3d 386 (2002); *Shelter Mut. Ins. Co. v. Kennedy*, 347 Ark. 184, 60 S.W.3d 458 (2001)). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with

a firm conviction that a mistake has been committed. *Id.* (citing *Sharp v. State*, 350 Ark. 529, 88 S.W.3d 848 (2002)).

This appeal also involves an issue of statutory interpretation. We review issues of statutory interpretation *de novo* because it is for this court to decide what a statute means. *City of Maumelle v. Jeffrey Sand Co.*, 353 Ark. 686, 120 S.W.3d 55 (2003); *Reding v. Wagner*, 350 Ark. 322, 86 S.W.3d 386 (2002). This court recently set forth its standard of review for statutory construction:

> When reviewing issues of statutory interpretation, we are mindful that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Yamaha Motor Corp. v. Richard's Honda Yamaha*, 344 Ark. 44, 38 S.W.3d 356 (2001); *Dunklin v. Ramsay,* 328 Ark. 263, 944 S.W.2d 76 (1997). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Burcham v. City of Van Buren,* 330 Ark. 451, 954 S.W.2d 266 (1997). A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *ACW, Inc. v. Weiss,* 329 Ark. 302, 947 S.W.2d 770 (1997). When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Ford v. Keith,* 338 Ark. 487, 996 S.W.2d 20 (1999); *State v. McLeod,* 318 Ark. 781, 888 S.W.2d 639 (1994). This court is very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.*

*Cave City Nursing Home, Inc. v. Arkansas Dep't of Human Servs.,* 351 Ark. 13, 21-22, 89 S.W.3d 884, 888-89 (2002).

### 3. Interpretation of Agreement for Engineering Services

The District first contends that the trial court erred when it awarded Perkins compensatory damages in the amount of $212,151.39. Specifically, the District asserts that no money was due and owing to Perkins under the contract because the contract awarded compensation based on the "actual construction costs," and construction did not occur. In reply, Perkins states the contract was not contingent upon actual construction of the

sewage system; rather, the payment provisions within the contract provided a time outline for when payment would be due should construction begin.

The contract contemplates the performance of certain engineering services by Perkins. Those services are specifically listed in Section A of the contract. The dispute at issue here arises under Section B of the contract. That provision states in relevant part:

1. The Owner shall compensate the Engineer for design and contract administration engineering services in the amount as shown in Attachment 1

   When Attachment 1 is used to establish compensation for the design and contract administration services, the actual construction costs on which compensation is determined shall exclude legal fees, administration costs, engineering fees, land rights, acquisition costs, water costs, and interest expense incurred during the construction period.

2. The compensation for preliminary engineering services, design and contract administration services shall be payable as follows:

(a) a sum which equals eighty percent (80%) of the compensation payable immediately after the construction contracts are awarded.

(b) A sum equal to fifteen percent (15%) of the compensation will be paid on a monthly basis for general engineering review of the contractor's work during the construction period on percentage ratios identical to those approved by the Engineer as a basis upon which to make partial payments to the contractor(s). However, payment under this paragraph and of such additional sums as are due the Engineer by reason of any necessary adjustments in the payment computations will be in an amount so that the aggregate of all the sums paid to the Engineer will equal ninety-five percent (95%) of the compensation. A final payment to equal 100 percent shall be made when it is determined that all services required by the Agreement have been completed except for the services set forth in Section A-20 hereof.

In connection with these payment provisions under the contract, the trial court made the following findings:

There is no provision in the Contract stating that the engineer would be paid for engineering services contemplated by Section A of the Contract if, for any reason, the project was not constructed. Nor is there a provision providing for payment of various services rendered prior to construction contract's [sic] being awarded. There is also no provision in the Contract stating that the engineer would not be paid for engineering services if the project was not constructed. From the evidence presented it is obvious to the court that Perkins' [sic] expected to be paid and that the district intended to pay Perkins for his work. Further, the District did pay Mr. Malone, the first engineer for his work in a reduced agreed upon amount.

Based on these findings, the court awarded Perkins compensatory damages in the amount of $212,151.39.

We conclude that under the express terms of the contract, Perkins was entitled to be compensated for his services. *The Restatement (Second) on Contracts § 227* (2004) provides explicit standards of preference regarding the interpretation of express conditions located within contracts:

(1) In resolving doubts as to whether an event is made a condition of an obligor's duty, and as to the nature of such an event, an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless the event is within the obligee's control or the circumstances indicate that he has assumed the risk.

The following commentary explains the rationale for such standards of preference:

The non-occurrence of a condition of an obligor's duty may cause the obligee to lose his right to the agreed exchange after he has relied substantially on the expectation of that exchange, as by preparation or performance. The word "forfeiture" is used in this Restatement to refer to the denial of compensation that results in such a case. The policy favoring freedom of contact requires that . . . the agreement of the parties should be honored even though forfeiture results. When, however, it is doubtful whether or not the agreement makes an event a condition of an obligor's duty, an interpretation is preferred that will reduce the risk of forfeiture. *For example, under a provision that a duty is to be performed "when" an event occurs, it may be doubtful whether it is to be performed only if that event occurs, in which case the event is a condition, or at such time as it would*

*ordinarily occur, in which case the event is referred to merely to measure the passage of time.* In the latter case, if the event does not occur some alternative means will be found to measure the passage of time, and the non-occurrence of the event will not prevent the obligor's duty from becoming one of performance. If the event is a condition, however, the obligee takes the risk that its non-occurrence will discharge the obligor's duty . . . If the event is within his [obligee's] control, he will assume this risk. If it is not within his [obligee's] control, it is sufficiently unusual for him to assume the risk that, in case of doubt, an interpretation is preferred under which the event is not a condition.

*The Restatement (Second) on Contracts § 227,* comment b (2004) (emphasis added). Likewise, another well-recognized treatise on contracts, *Corbin on Contracts,* states "one who unjustly prevents the performance or the happening of a condition of promissory duty thereby eliminates it as a condition. Thus, that party cannot escape liability by preventing the happening of the condition on which it was promised." 8-40 Arthur L. Corbin, *Corbin on Contracts* § 40.17 (2004). *See also* Am. Jur.: 17A Am. Jur. 2d *Contracts* § 687 (2004) ("One who prevents or makes impossible the performance or occurrence of a condition precedent, upon which that person's liability depends under the contract, cannot insist or rely on the condition . . . A promisor who prevents or hinders the occurrence or fulfillment of a condition in a contract excuses the condition, and the liability of the promisor is fixed regardless of the failure to perform the condition.").

Our case law also supports this same principle of law in the enforcement of private contracts. In *Ingham Lumber Co. v. Ingersoll & Co.,* 93 Ark. 447, 125 S.W. 139 (1910), Ingersoll entered into a written contract with Ingham whereby Ingham employed Ingersoll to cut and manufacture lumber on its land. After Ingersoll began to perform under the contract, the manager of Ingham notified Ingersoll to stop cutting and manufacturing the timber on account of a shortage of money. In short, Ingersoll wanted to continue its work under the contract, but was prevented from doing so by Ingham. In holding in favor of Ingersoll, we said, "[a] contract is not invalid, nor is the obligor therein in any manner discharged from its binding effect because it turns out to be difficult or burdensome to perform." *Id.* We find no reason why the same principle of law should not also extend to a written contract entered into by an improvement district for the purpose of securing the services of an engineer. After all, our case law has never allowed an improvement district to negotiate contracts with

parties, abandon the improvement, and then be wholly relieved from its duty to pay for completed preliminary work. *Gould v. Sanford,* 155 Ark. 304, 244 S.W. 433 (1922) ("preliminary expenses" can be imposed on the property owners of the district, but services performed as part of the issuance for bonds are not services preliminary in nature); *Elkins v. Huntington-Midland Highway Dist.,* 161 Ark. 556, 256 S.W.825 (1923) (allowing recovery of engineering fees as "preliminary expenses").

■ In this case, Perkins had no control over whether construction contracts would be awarded or whether the improvement would in fact be constructed. Nevertheless, the District asks us to find that Perkins assumed the risk when he entered into the agreement because payment under the contract was contingent upon actual construction of the sewage system. As explained earlier, when it is doubtful whether or not an agreement makes an event a condition of an obligor's duty, an interpretation is preferred that will reduce the obligee's risk of forfeiture unless the event is within the obligee's control. *The Restatement (Second) on Contracts § 227,* comment b (2004). Here, the trial court examined the payment provisions of the contract and, in resolving any doubt as to whether construction of the improvement was a condition of the District's obligation to pay for engineering services performed by Perkins, the trial court adopted an interpretation that reduced the risk of forfeiture. In other words, because construction of the proposed improvement was not within Perkins's control, he did not assume the risk of forfeiting payment if the project was not constructed. We cannot say that the trial court clearly erred in ruling that payment under the contract was not contingent upon actual construction of the sewage system.

■ The District nonetheless contends that it had a right to abandon the proposed improvement project. While we certainly agree with the District that an improvement district has a right to terminate construction of a proposed improvement project, Arkansas law imposes an obligation on improvement districts to pay "preliminary expenses" for contemplated improvement projects that are for any reason not made. Arkansas Code Annotated § 14-92-238 (Repl. 1998) specifically provides as follows:

Preliminary Expenses

(a) In case, *for any reason,* the *improvement* contemplated by any suburban improvement district organized under this subchapter *is*

not made, the *preliminary expense shall* be a first lien upon all the land in the district and shall be paid by a levy of a tax thereon upon the assessed value for county and state taxation.

(b) The levy shall be made by the chancery court of the county and shall be collected by a receiver to be appointed by the court.

Ark. Code Ann. § 14-92-238 (emphasis added). The purpose of this statute is to provide a means for payment of "preliminary expenses" incurred by improvement districts in connection with improvements contemplated by such districts even if those improvements are, for whatever reason, abandoned. Thus, to the extent that the engineering services performed by Perkins are deemed to be "preliminary expenses," construction is not a condition of payment for those expenses under Arkansas law.

### 4. "Preliminary Expenses" under Ark. Code Ann. § 14-92-238

While we conclude that payment under the contract was not contingent upon construction of the project, we agree with the District that the trial court erred in finding that *all* of the damages awarded to Perkins were "preliminary expenses" under Ark. Code Ann. § 14-92-238. Though all the work performed by Perkins was indeed preliminary to the construction phase of the project, Perkins had yet to complete all the work required by the contract. Under the contract, Perkins was obligated to perform an extensive list of engineering services for the District, with certain services to be performed prior to construction and other services to be performed during the course of construction and for a certain period of time thereafter.

As stipulated by both parties, the $212,151.39 fee would have been the payment made by the District had the entire construction project been completed and the contract performed. Although the trial court correctly ruled that payment for engineering services under the contract was not contingent upon actual construction of the project, it erred in finding that the entire sum of $212,151.39 awarded to Perkins was a "preliminary expense" under section 14-92-238. Despite testimony by the District's expert, William Malone, that "all of the work done or the majority of the work done by the Plaintiff [Perkins] was necessary to determine the cost of the project and the benefits to be derived from the project," the work performed by Perkins did not consti-

tute all of the work contemplated under the contract. Moreover, to equate payment of the entire contract price with a "preliminary expense" defies common sense. Section 14-92-238 only provides for payment of "preliminary expenses" when an improvement is *abandoned*, not fully performed. As we held in *Wofford v. Bettis*, 169 Ark. 487, 275 S.W.903 (1925), once construction of the improvement begins and the contract is completed, the "preliminary expenses" merge into the general cost of the improvement. We, therefore, reverse and remand for the trial court to determine the portion of compensatory damages awarded that qualify as "preliminary expenses" under Ark. Code Ann. § 14-92-238.

### 5. Prejudgment Interest

Pursuant to Section E of the contract, Perkins and the District agreed that

> [i]f Owner fails to make any payment due Engineer within 60 days for services and expenses and funds are available for the project then the Engineer shall be entitled to interest at the rate of 10% per annum from said 60th day.

Perkins contends on appeal that the trial court erred when it declined to award prejudgment interest as a "preliminary expense" under section 14-92-238. In response, the District asserts that the contract expressly precludes payment of prejudgment interest if funds are not "available" for the project.

Prejudgment interest is compensation for recoverable damages wrongfully withheld from the time of the loss until judgment. *Ozark Unlimited Resources Co-op., Inc. v. Daniels*, 333 Ark. 214, 969 S.W.2d 169 (1998). Perkins urges this court to award him prejudgment interest based on either the above-quoted contractual provision or our common law. Beginning with the contract, we must first determine whether funds are "available for the project," as required by Section E of the contract. If funds are available for the project, we must then determine whether prejudgment interest would be recoverable as a "preliminary expense" under section 14-92-238. Both parties agree that an improvement district is an entity that has no assets until it exercises its power to levy a tax. As noted by both the District and Perkins, the Arkansas Soil and Water Conservation Commission set aside $3.5 million in funds from a specific bond program for this

improvement project. Upon cancellation of the project, however, those funds were "deobligated." Thus, no funds "are available for the project." We therefore hold that Perkins is not entitled to prejudgment interest under the terms of the contract.

■ Arkansas common law also allows for the recovery of prejudgment interest. In *TB of Blytheville v. Little Rock Sign & Emblem,* 328 Ark. 688, 697, 946 S.W.2d 930, 934 (1997), we stated the common law rule that a party may recover prejudgment interest where damages are ascertainable with reasonable certainty. *Id.* However, any attempt by Perkins to rely upon our decision in *TB of Blytheville v. Little Rock Sign & Emblem, supra,* is misplaced. The terms for payment of prejudgment interest negotiated by Perkins and the District represent a modification of the common law standard for awarding prejudgment interest. As such, we give effect to the plain language of the contract. *Chamberlin v. State Farm Mut. Auto Ins. Co.,* 343 Ark. 392, 36 S.W.3d 281 (2001); *Pardon v. Southern Farm Bureau Cas. Ins. Co.,* 315 Ark. 537, 868 S.W.2d 468 (1994). *See also Hancock v. Tri-State Ins. Co.,* 43 Ark. App. 47, 858 S.W.2d 152 (1993). Thus, we affirm the trial court on this point.

### 6. Attorney's Fees

In his last point on direct appeal, Perkins claims that the trial court erred when it awarded him attorney's fees and costs[7] as the prevailing party under Ark. Code Ann. § 16-22-308 (Repl. 1999), but then ruled that those fees were not recoverable as a "preliminary expense" under section 14-92-238 (Repl. 1998). Arkansas law allows a prevailing party to recover reasonable attorney's fees in a breach-of-contract action unless Arkansas law or the contract that is the subject matter of the action provides otherwise. *See* Ark. Code Ann. § 16-22-308. In this case, the circuit court did award attorney's fees to Perkins as the prevailing party. The issue, however, is whether these fees should be a tax lien against district land as "preliminary expenses."

To reiterate, section 14-92-238 mandates that "preliminary expenses" resulting from an improvement that was contemplated by an improvement district but was not made for whatever reason

---

[7] $87,901.50 in attorney's fees and $1,216.01 in costs for work performed by The Rose Law Firm and $3,750.00 in attorney's fees for work performed by The Laws and Murdock Law Firm.

shall be a first lien on the district's land. The statute also mandates that the "preliminary expenses" shall be paid by a tax levied on the district's land upon the assessed value for county and state taxation. This court in *Elkins v. Huntington-Midland Highway Dist.*, 161 Ark. 556, 256 S.W. 835 (1923), defined "preliminary expenses." First, we held that an engineer may recover the $250 that he loaned an improvement district as "preliminary expenses." *See Elkins, supra.* We then went on to say that "preliminary expenses" include:

> *attorney's fees as counsel to the board* in the preliminary work of organization, etc., such costs as expenses for maps, plats, surveys of land and for engineering expenses in preparing the plans and specifications. In other words, all expenses incident to the investigation by which it is sought to determine whether the value of the benefits to the lands by the improvement contemplated would exceed the cost of such improvement and thereby warrant its completion.

*Elkins,* 161 Ark. At 570-71, 256 S.W. at 839 (quoting *Thibault v. McHaney*, 119 Ark. 188, 177 S.W. 877 (1917)) (emphasis added). Thus, we sanctioned payment of attorney's fees incurred by the *improvement district's board* as "preliminary expenses." This court, however, has never intimated that attorney's fees *incurred by the engineer* in a lawsuit against the district would be a lien against the district's land.

[6] Levying a tax on the district's land (ultimately to be paid by the district's landowners) for payment of the board's attorney's fees is a categorically different matter from taxing the improvement district for the engineer's attorney's fees when that engineer is suing the district. The General Assembly has never provided for such a tax lien; nor has our case law; nor did the contract between the parties in the instant case. Accordingly, we agree with the circuit court that Perkins's attorney's fees and costs were not "preliminary expenses" as contemplated by section 14-92-238, and hence, are not subject to a tax levy against the district's land.

Affirmed in part; Reversed and Remanded in part.

THORNTON, J., dissents.

RAY THORNTON, Justice, dissenting. I can find no provision in the contract for payment of engineering fees

except upon the condition that such payments become due during construction of the project. Construction work on this project did not commence. Because I believe that the language in the contract precludes payment to Mr. Perkins unless work on the project commenced, I must respectfully dissent.

The pertinent language from the contract is as follows:

SECTION B — COMPENSATION FOR ENGINEERING SERVICES

1. The OWNER *shall compensate the ENGINEER* for design and contract administration engineering services *in the amount as shown in Attachment 1.*

*When Attachment 1 is used to establish compensation* for the design and contract administration services, *the actual construction costs on which compensation is determined shall exclude* legal fees, administration costs, engineering fees, land rights, acquisition costs, water costs, and interest expense incurred *during the construction period.*

2. The compensation for preliminary engineering services, design and contract administration services shall be payable as follows:

(a) A sum which equals *eighty percent (80%) of the compensation payable* immediately *after the construction contracts are awarded.*

(b) A sum equal to *fifteen percent (15%) of the compensation will be paid on a monthly basis for general engineering review of the contractor's work during the construction period* on percentage ratios identical to those approved by the ENGINEER as a basis upon which to make partial payments to the contractor(s). However, payment under this paragraph and of such additional sums as are due the ENGINEER by reason of any necessary adjustments in the payment computations will be in an amount so that the aggregate of all sums paid to the ENGINEER will equal ninety-five (95%) of the compensation. *A final payment to equal 100 percent* shall be made *when it is determined* that all *services required by the Agreement have been completed* except for the services set forth in Section A-20 hereof. [Emphasis added.]

We have explained that when contracting parties express their intention in a written instrument in clear and unambiguous language, it is our duty to construe the written agreement accord-

ing to the plain meaning of the language employed. *C & A Constr. Co. v. Benning Constr. Co.*, 256 Ark. 621, 509 S.W.2d 302 (1974).

Applying that principle to the case now before us, I believe that the plain language of the contract provides that Mr. Perkins would not be compensated unless certain events occurred. First, section B1 of the contract provides that "[t]he OWNER shall compensate the ENGINEER for design and contract administration engineering services in the amount as shown in Attachment 1." A review of attachment 1 reveals that the fee schedule for basic engineering services is based on "total actual construction cost." According to the clear language of the contract, Mr. Perkins's compensation is based upon total actual construction costs. There were no actual construction costs, and therefore, Mr. Perkins is not entitled to compensation for a project that was never built.

Next, according to Section B2(a), Mr. Perkins, as engineer, would be entitled to "[a] sum which equals eighty percent (80%) of the compensation payable immediately after the construction contracts are awarded." In this case, a construction contract was not awarded. Thus, Mr. Perkins was not entitled to compensation pursuant to Section B2(a).

Finally, Section B2(b) provides that Mr. Perkins would be compensated for reviewing the "contractor's work during the construction period." Because there was no construction project for Mr. Perkins to review, he was not entitled to compensation under this provision of the contract.

After reviewing the plain language of the contract, I believe that Mr. Perkins was not entitled to payment because the events that would give rise to his compensation never occurred. Accordingly, I would reverse the trial court.

I respectfully dissent.