

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV–14–976

| | |
|---|---|
| | **Opinion Delivered** October 7, 2015 |
| PLATINUM PEAKS, INC.<br>APPELLANT | APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT<br>[NO. CIV-2009-189] |
| V. | |
| SHIRLEY BRADFORD<br>APPELLEE | HONORABLE JIM GUNTER, JUDGE<br>AFFIRMED |

## BRANDON J. HARRISON, Judge

This appeal from a jury trial presents two questions: did the circuit court err in finding that Shirley Bradford's claim against Platinum Peaks, Inc. for negligently damaging her property was not barred by Arkansas's statute of repose; and did it abuse its discretion when it instructed the jury using Arkansas Model Jury Instruction (Civil) 1110? We hold that the circuit court did not err on the first point—one which presents an issue of first impression under Arkansas's current statute-of-repose law. On the second point, we hold that the alleged jury-instruction error was not preserved for review.

### I. *Facts*

Shirley Bradford inherited five acres along Greers Ferry Lake in 1975. In the early 1990s, Bradford decided to build a house on the lake property. Before doing so, she received permission from Robert Hixson to build a road across his property so she could

SLIP OPINION

access the home site. Bradford built a gravel country road that was about twelve feet wide, was situated on a hill, required little maintenance, and did not change the overall pattern of the hillside or its drainage. Bradford finished building her home in 1996 or 1997 and connected it to electricity and water services. She moved out of the house in 2001 or 2002 due to an apparently severe latex allergy but leased the property to a tenant.

In 2003 Platinum Peaks, Inc., a developer, bought Robert Hixson's property. Platinum owner Robert Fason gave Bradford permission to continue to use the country road across the property. Bradford never obtained an express, written easement and her road access was permissive. In late 2003 Platinum hired engineer Greg Smith and his management company, Cenark Management Services, Inc., to design and build a brand new road in connection with a subdivision Platinum was developing near Bradford's house. The new road subsumed Bradford's old gravel road and cut a 200–300 foot wide swath through the hillside. The new road was unlike the old road in size and nature because it was intended to be accepted as a Van Buren County road.

Engineer Smith alerted Platinum in early 2004 about some stabilization efforts he realized were needed for the new road. At one point in 2004 Platinum hired Wade Bradford, Shirley's son, and his company World Wide Excavating, to help eliminate some of the drainage problems that Smith had identified. Platinum also hired other contractors to help with erosion or "surface slide" problems that occurred after it would rain.

A letter from Greg Smith to Robert Fason, dated 30 April 2004, states in part, "The rain of last Friday night and Saturday, 4/23-24/2004, did damage to the slopes at the far end near the Bradford home. Two smaller slides did occur about midway down the

road.  They are being repaired now."  Smith's letter then states, "It is best these problems come to the surface now rather than after base, paving and utilities [for the subdivision] are in place.  This problem is not foreign to the area. . . . What I want to help you do is stabilize the road and slopes now and not have to come back because of faulty work."

In late March 2005 a major landslide crushed Shirley Bradford's garage and tore a small room off the west side of the house.  Bradford started to rebuild and renovate the house in 2008 after the land around her house had stabilized.  When the road across Platinum's property would "slide," as it did numerous times, problems with Shirley's utility services would arise, and Wade Bradford would call Robert Fason to get them fixed.  After a large slide in the road in 2009, Petit Jean Electric Company stopped providing utility services to Bradford's house because it couldn't repair the damaged utility lines after the landslides rendered the road impassable.  With no water, electricity, or climate control, Bradford could not move in or complete the restoration of her house. The lack of utility services caused her to abandon the house, which in turn led to vandals breaking her windows and skylights.

Bradford sued Platinum in June 2009, alleging that it negligently constructed the road and caused her damage.  During the jury trial, an Arkansas Geological Commission report was admitted, and it indicated that the construction of the new road to the west of Bradford's home was the "principle destabilizing influence" causing the landslide. Whether the Bradford house would remain stable during heavy rainfall, "only time will tell," according to the report.  Her expert at trial concluded that it would take "six

SLIP OPINION

figures" to repair and restore the house. The jury awarded Bradford $200,000 in damages.

Platinum appeals the adverse judgment.

## II.  *Statute of Repose*

Platinum's first point on appeal is that Arkansas's statute of repose barred Bradford's

negligence claim—which is based solely on property damage—as a matter of law.  That

statute (Arkansas Code Annotated section 16-56-112 (Repl. 2005)) provides:

> (a) No action in contract, whether oral or written, sealed or unsealed, to recover damages caused by any deficiency in the design, planning, supervision, or observation of construction or the construction and repair of any improvement to real property or for injury to real or personal property caused by such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, or observation of construction or the construction or repair of the improvement more than five (5) years after substantial completion of the improvement.

> (b)(1) No action in tort or contract, whether oral or written, sealed or unsealed, to recover damages for personal injury or wrongful death caused by any deficiency in the design, planning, supervision, or observation of construction or the construction and repairing of any improvement to real property shall be brought against any person performing or furnishing the design, planning, supervision, or observation of construction or the construction and repair of the improvement more than four (4) years after substantial completion of the improvement.

>> (2) Notwithstanding the provisions of subdivision (b)(1) of this section, in the case of personal injury or an injury causing wrongful death, which injury occurred during the third year after the substantial completion, an action in tort or contract to recover damages for the injury or wrongful death may be brought within one (1) year after the date on which injury occurred, irrespective of the date of death, but in no event shall such an action be brought more than five (5) years after the substantial completion of construction of such improvement.

Our supreme court has interpreted section 16-56-112 to mean that, after a fixed number

of years, a plaintiff's suit is barred even if the time period runs before the plaintiff suffers

any injury. *Ray & Sons Masonry Contractors, Inc. v. U.S. Fid. & Guar. Co.*, 353 Ark. 201, 114 S.W.3d 189 (2003).

During the trial, Platinum moved for a directed verdict based on the statute of repose, partly because "the testimony has been that the road was in a condition of substantial completion on April 12th of 2004" and partly because of the holding in *Okla Homer Smith Furniture Mfg. Co. v. Larson & Wear, Inc.*, 278 Ark. 467, 646 S.W.2d 696 (1983). For reasons that will be clear soon, we will concentrate on the statute itself and the caselaw, not the fact-based substantial-completion ruling. *Okla Homer* involved a dispute between the owner of a building and the construction contractor who built it. The owner sued the contractor in tort, more than five years after the roof was constructed, for negligently designing and installing the building's roof. The supreme court held that the owner's suit was barred by section 37–237 (now codified at Ark. Code Ann. § 16-56-112(a)),[1] reasoning that because the owner filed a construction-related

---

[1] Subsection 16-56-112(a) was, under the prior codification scheme, Ark. Stat. Ann. § 37-237 (Supp. 1985). And what is now subsection 16-56-112(b) was previously Ark. Stat. Ann. § 37-238 (Supp. 1985). The numbering system has changed, but the statutory language has remained substantively the same. Below are the two prior statutes of repose that were eventually merged into the single current statute:

Section 37-237 was titled "Action for property damage—Design, planning, supervision, or observation of construction—Five year limitation," and it stated: "No action in contract (whether oral or written, sealed or unsealed) to recover damages caused by any deficiency in the design, planning, supervision or observation of construction or the construction and repair of any improvement to real property or for the injury to property real or personal, caused by such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision or observation of construction or the construction or repair of such improvement more than five (5) years after substantial completion of same. [Acts 1967, No. 42 § 1, p. 91]."

Section 37-238 was titled "Personal injury or wrongful death—Four year limitation," and it stated: "No action in tort or contract (whether oral or written, sealed or unsealed) to recover damages for personal injury or wrongful death caused by any deficiency in the design, planning,

breach-of-contract claim more than five years after the project was substantially completed, the owner could not recover property damage.

The court denied Platinum's directed-verdict motion and refused to bar Bradford's claim. More specifically, the court applied the statute to Bradford's claim, but then found, as a matter of fact, that the statute's clock had not yet started to run against Bradford's claim because the road had not been substantially completed. Here is the court's ruling:

> [T]he first one that's easy for me to decide is statute of limitations. This one has not run. Now there's substantial testimony that the road was not complete. The roadbed was built but it was not complete. At the very least, regardless of the ongoing nature that you argued, the very easiest part for me is there was plenty of testimony that the road was not complete.

Platinum argues here that Ark. Code Ann. § 16-56-112(b), as interpreted by the Arkansas Supreme Court in *Okla Homer*, barred Bradford's negligence claim as a matter of law for an alleged deficiency in design, supervision, and construction of the new road. But as we have explained, *Okla Homer* interpreted the precursor to § 16-56-112(a), not § 16-56-112(b); and the two subsections are not substantively the same. So *Okla Homer*'s holding cannot control this case.

Our supreme court applied subsection 16-56-112(b)(1) in *65th Ctr., Inc. v. Copeland*, 308 Ark. 456, 825 S.W.2d 574 (1992). There, J.C. Golden, a blind bus passenger, tripped over a retaining wall and fell onto a shopping center's paved parking lot while transferring buses. Copeland, Golden's guardian, brought a personal-injury claim

---

supervision or observation of construction or the construction and repairing of any improvement to real property shall be brought against any person performing or furnishing the design, planning, supervision or observation of construction or the construction and repair of such improvement more than four (4) years after substantial completion of same. [Acts 1967, No. 42, § 2, p. 91]."



against the engineer and construction firm who built the retaining wall. The wall was designed in 1967 and built in 1969, but Golden's injuries did not occur until 1990. The supreme court affirmed the circuit court's grant of summary judgment to the engineer and construction firm and barred Copeland's claim as a matter of law because a personal-injury claim was presented. The point is that the supreme court applied the plain language of the statute of repose in *65th Center*, and we need only do the same today.

Applying the statute's plain terms to this case, we hold that the circuit court did not err in allowing Bradford's negligence claim to go to the jury because her claim was not barred by section 16-56-112(b)—and Platinum concedes that section 16-56-112(a) does not apply. That means that only subsection 112(b) is at issue. But it does not apply at all to Bradford's negligence claim because her claim was not one for personal injury or wrongful death; it was solely based on property damage. True, the circuit court chose to apply subsection 112(b) in this case but found its power to bar the claim wanting given a fact-based, substantial-completion analysis. We affirm the ultimate decision to present Bradford's negligence to the jury, though we do so for the more fundamental reason that neither subsection 112(b) nor subsection 112(a) even applies to Bradford's particular property-damage negligence claim in the first instance. *See Dunn v. Westbrook*, 334 Ark. 83, 85, 971 S.W.2d 252, 254 (1998) (affirming the circuit court where it reaches the right result but for the wrong reason). In the end, the result to the parties is the same as it was in the circuit court.

III. *Jury Instruction*

In its directed-verdict motion at the close of Bradford's case, Platinum argued that it owed Bradford no duty, or at least a lesser duty, in building or maintaining the road because her road use was solely permissive. Bradford, Platinum further argued, was a licensee, not an invitee; and as an owner of the roadway, Platinum owed Bradford no duty other than not to commit a wanton or intentional act to harm her. Bradford, on the other hand, argued that the relational distinction of licensee, invitee, or trespasser did not matter in this case and that the jury should be given Arkansas Model Jury Instruction (Civil) 1110, which states:

> AMI 1110 *Duty Owed by Owner or Occupier of Land—Injuries or Damages Off Premises*
>
> It is the duty of an [owner][occupier] of land to protect [persons][and][property] on land of another from damages resulting from [a structure][an artificial condition] upon [his][her] land if
>
> (A) [he][she] knows, or should know, of an unreasonable danger created by that [structure][condition] and
>
> [(B)] [he][she] knows, or should know, that the danger exists without the consent of those affected by it, and
>
> (C) [he][she] fails, after having a reasonable opportunity, to eliminate the danger or otherwise to protect such [persons][or][property] against it.
>
> A violation of this duty is negligence.

After some discussion, the court orally denied Platinum's directed-verdict motion. The court then asked the parties if they wanted to talk about jury instructions or wait until the close of evidence. Bradford's counsel responded that he wanted to argue the issues that "are fresh on everybody's mind."

Platinum's counsel requested more time to read through instructions 1101 to 1109 and asked the court if it was "ignoring the classification of invitee versus licensee." Then this colloquy occurred:

| | |
|---|---|
| COURT: | I understand the argument there to be you don't have to be on premises. It doesn't matter if you're an invitee or licensee. It doesn't happen on premises. And that's where I come down. |
| DEFENSE COUNSEL: | Well, that's the only instruction I'm prepared for dealing with, licensee and there's no point in arguing about that any more. You've ruled on that. |
| COURT: | Yes, sir. All right, so then are we just down to arguing about the two that Plaintiff's counsel has just submitted to the court? |
| DEFENSE COUNSEL: | I think that's true Your Honor. |
| COURT: | 110 is an AMI. And that's one we just mentioned. It doesn't deal with invitee. You would like to object to 110? |
| DEFENSE COUNSEL: | Yes, sir. |
| COURT: | Okay. Let the record reflect Defense counsel objects to the submission of 110. And that objection is overruled. |
| PLAINTIFF'S COUNSEL: | I think just to be clear for the record Your Honor, it's AMI 1110. |
| COURT: | You're correct, it's AMI 1110, which is submitted by Plaintiff, to which it's objected to by Defense. And that objection is overruled. It will be submitted over objection. |

Platinum's second point on appeal is that the court erred when it instructed the jury using AMI 1110 because Bradford's use of the road has always been permissive. That fact means that she was a licensee; and the consequence of the licensee label means that

Platinum did not owe her a duty to maintain the road "in a reasonably safe condition."  It also argues that there is "no evidence in the record to indicate that either [Bradford] or her property were damaged by a condition on [Platinum's] property" and "the facts in the cases referenced in the comment to AMI 1110 are not at all the same."

Arkansas Rule of Civil Procedure 51 (2014) sets forth how to preserve an objection to jury instructions:

> No party may assign as error the giving or the failure to give an instruction unless he objects thereto before or at the time the instruction is given, stating distinctly the matter to which he objects and the grounds of his objection, and no party may assign as error the failure to instruct on any issue unless such party has submitted a proposed instruction on that issue. Opportunity shall be given to make objections to instructions out of the hearing of the jury.

> A mere general objection shall not be sufficient to obtain appellate review of the court's action relating to instructions to the jury except as to an instruction directing a verdict or the court's action in declining to do so.

Our supreme court has interpreted this rule to mean that "[a]n objection which merely complains that a jury instruction is an incorrect declaration of the law is a general objection, reserving no point for review."  *Hess v. Treece*, 286 Ark. 434, 442, 693 S.W.2d 792, 797 (1985).  A caselaw-based exception exists when the circuit court gives a jury instruction over a general objection, and the jury instruction is inherently erroneous and prejudicial.  *See Advocat, Inc. v. Sauer*, 353 Ark. 29, 65, 111 S.W.3d 346, 367 (2003) (citing *Mo. Valley Bridge & Iron Co. v. Malone*, 153 Ark. 454, 240 S.W. 719 (1922) ("Where an instruction is inherently erroneous, a general objection to it will suffice.")). An inherently erroneous instruction is one that could not be correct under any

circumstance. The presentation of an erroneous instruction is also subject to a harmless-error rule. *Advocat*, *supra*.

We hold that Platinum's jury-instruction arguments are not preserved for our review. Platinum, in this situation, needed to have been more detailed and specific about why it thought the circuit court erred. After the court asked Platinum if it would like to object to 1110, Platinum replied, "Yes, sir." But there was no more discussion or specific explanation on why the court should not have given the instruction. We grant that the context and substance of the long colloquy after the close of Bradford's case included some discussion of jury instructions; but it also included sufficiency of the evidence, statute of repose, nuisance, and other substantive topics. (Only a much abbreviated version of the relevant colloquy was recited above.) We have tried but cannot reliably understand what Platinum wanted from the circuit court regarding jury instructions on negligence after it accepted that the court had already ruled that Bradford's status as licensee or invitee did not matter. The jury had to be instructed on the negligence claim in some fashion. But Platinum's objection to Bradford's proposed instruction was too general. And Platinum does not argue that the jury instruction the circuit court gave was inherently erroneous. It also presents arguments on appeal that were not first presented to the circuit court. We therefore decline to address the merits of its AMI 1110 jury-instruction argument and affirm the circuit court on this point, too.

Affirmed.

GRUBER and HIXSON, JJ., agree.

*Adkisson & Wilcox, LLP*, by: *William C. Adkisson*, for appellant.
*McKinney & McKinney, PLLC*, by: *Quincy W. McKinney*, for appellee.